| | |
|---|---|
| RETURN DATE: FEBRUARY 17, 2004 ) | SUPERIOR COURT |
| ) | |
| Qantum Communications Corporation, a ) | JUDICIAL DISTRICT OF STAMFORD/ |
| corporation; Qantum of Auburn, ) | NORWALK AT STAMFORD |
| LLC, a limited liability company; Qantum ) | |
| Acquisition, LLC, a limited liability ) | |
| company, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| John F. Kennedy, an individual; ) | |
| ) | |
| Defendant. ) | JANUARY 21, 2004 |

## COMPLAINT

Plaintiffs Qantum Communications Corporation, Qantum of Auburn, LLC, and Qantum Acquisition Company, LLC ("Qantum"), by and through their attorneys, allege the following:

**COUNT ONE** (INTENTIONAL INTERFERENCE WITH BUSINESS AND CONTRACTUAL RELATIONS)

**A.    Parties and Non-Parties**

1.   Plaintiff Qantum Communications Corporation is a Delaware corporation having its principal place of business in Stamford, Connecticut.

2.   Plaintiff Qantum of Auburn, LLC is a limited liability company organized under the laws of the State of Delaware and having no members who are citizens of the State of Alabama.

B0357319

1

3.  Plaintiff Qantum Acquisition Company, LLC is a limited liability company organized under the laws of the State of Delaware and having no members who are citizens of the State of Alabama.

4.  Upon information and belief, Defendant John F. Kennedy ("Kennedy") is an Alabama resident. As discussed *supra*, Kennedy contractually agreed to the personal jurisdiction and venue of this Court.

5.  Upon information and belief, non-party Meghan Chenoweth ("Chenoweth") is an Alabama resident.

6.  Upon information and belief, non-party Stacey Linn ("Linn") is an Alabama resident.

7.  Upon information and belief, non-party Tiger Communications, Inc. ("Tiger Communications") is an Alabama corporation with its principal place of business in Tallassee, Alabama.

B.  **Qantum's Contractual Relationship with Chenoweth**

8.  On or about September 1, 1999, in consideration of continued employment, Chenoweth entered into a Non-Compete Agreement with Root Communications Group, L.P. ("Root"), the owner of various radio stations in and around the Auburn/Opelika, Alabama area. The Non-Compete Agreement was executed in Daytona Beach, Florida.

B0357319

9. At all materials times, Chenoweth was employed as a salesperson. The Non-Compete Agreement between Root and Chenoweth placed certain reasonable restrictions on Chenoweth's ability to compete with Root within a defined Market Area. The Non-Compete Agreement defined Root's Market Area as "the territory within a 75 mile radius of the city(ies) of license and/or the transmitter facility(ies) of the radio station(s) in which [Chenoweth] has worked for [Root]."

10. As part of the Non-Compete Agreement, Chenoweth acknowledged that Root had legitimate business interests to protect, including, among other things, valuable business information, substantial relationships with specific prospective and existing sales accounts, sales account good will associated with extraordinary or specialized training of its employees, and promotion of Root's business practice through its established name in the radio industry.

11. The Non-Compete Agreement between Root, as employer, and Chenoweth, as employee, provided as follows:

> "Unless Employee receives Root's advance written waiver as described in paragraph 8 below, during his employment with Root and for a period of six (6) months thereafter, whatever the reason for Employee's termination, Employee shall not, either directly or indirectly, either on his/her own behalf or on behalf of another business, engage in the following activities, or assist other in such activities, anywhere in Root's Market Area:
>
> a) hire, recruit, or attempt to recruit, for any radio station, any person employed by Root

B0357319

3

                    at any time during the previous twelve (12) months:

b)    solicit or accept any radio advertising business from any of Root's current, former or prospective accounts (a prospective account is defined as any entity Root has actively solicited, planned to solicit or sold advertising time to during the twelve (12) months before Employee's termination of employment with Root); or

c)    enter into, engage in, be employed by, be connected to or consult for any radio station within Root's Market Area.

12.    The Non-Compete Agreement provided that any successor or assignee of Root was authorized to enforce the Non-Compete Agreement as if the name of such successor or assignee replaced Root throughout the Non-Compete Agreement.

13.    Effective July 2, 2003, Qantum purchased 100% of the limited partnership interests of Root. As part of the sale, Root assigned its rights and liabilities to Qantum, including the rights established by the Non-Compete Agreement with Chenoweth.

14.    Following the purchase, Chenoweth became employed with Qantum, and for a period of time thereafter, Chenoweth acted in accordance with her obligations under the Non-Compete Agreement assigned to Qantum.

B0357319

4

15. At all relevant times mentioned herein, Qantum has fully performed all of its obligations under the Non-Compete Agreement..

16. Chenoweth recently terminated her employment with Qantum and accepted a position with Qantum's competitor, Tiger Communications, which operates certain radio stations in the Auburn/Opelika, Alabama area, which fall within Root's Market Area defined by the Non-Compete Agreement.

17. Chenoweth's actions were taken in contravention to and in violation of the provisions of the Non-Compete Agreement, and Chenoweth's actions constitute a material breach of the Non-Compete Agreement.

18. Upon information and belief, Chenoweth was actively solicited by Kennedy, her former supervisor at Qantum, and Tiger Communications to resign her position with Qantum and accept employment with Tiger Communications, thereby breaching her contractual agreement with Qantum.

19. Kennedy and Tiger Communications knew of the existence of the Non-Compete Agreement between Qantum and Chenoweth. In fact, upon learning that Chenoweth was solicited to leave Qantum for Tiger Communications, Qantum sent a letter to Chenoweth on December 23, 2003. The letter, which Chenoweth provided to Tiger Communications and counsel for Tiger Communications, advised Chenoweth that Qantum would consider the

B0357319

acceptance of employment with Tiger Communications as a material breach of the Non-Compete Agreement. Counsel for Tiger Communications acknowledged receipt of the December 23rd letter on or about December 31, 2003.

20. Despite its knowledge of the Non-Compete Agreement described above, Kennedy and Tiger Communications intentionally and deliberately solicited Chenoweth to resign her position with Qantum and accept employment with Tiger Communications, thereby intentionally interfering in the contractual relationship that existed between Qantum and Chenoweth.

21. Kennedy and Tiger Communications solicited Chenoweth to resign her position with Qantum and accept employment with Tiger Communciations without regard to the rights of Qantum under the Non-Compete Agreement and with the intent that Chenoweth breach the Non-Compete Agreement.

22. Chenoweth's actions caused damage to Qantum and continue to cause damage to Qantum to the extent Chenoweth's actions are ongoing and to the extent Chenoweth remains employed with Tiger Communications.

C. **Qantum's Contractual Relationship with Linn**

23. In consideration of the benefits of employment, Linn entered into a Non-Compete Agreement with Qantum of Auburn, LLC., an affiliate limited liability corporation owned indirectly by Qantum.

B0357319

6

24.  At all materials times, Linn was employed as a salesperson. The Non-Compete Agreement placed certain reasonable restrictions on Linn's ability to compete with Qantum within a defined Market Area. The Non-Compete Agreement defined Market Area as "the territory within a 75 mile radius of the city(ies) of license and/or the transmitter facility(ies) of the radio station(s) in which [Linn] has worked for Qantum."

25.  As part of the Non-Compete Agreement, Linn acknowledged that Qantum had legitimate business interests to protect, including, among other things, valuable business information, substantial relationships with specific prospective and existing sales accounts, sales account good will associated with extraordinary or specialized training of its employees, and promotion of Qantum's business practice through its established name in the radio industry.

26.  The Non-Compete Agreement between Qantum as employer, and Linn, as employee, provided as follows:

> "Unless Employee receives Qantum's advance written waiver as described in paragraph 8 below, during his employment with Qantum and for a period of six (6) months thereafter, whatever the reason for Employee's termination, Employee shall not, either directly or indirectly, either on his/her own behalf or on behalf of another business, engage in the following activities, or assist others in such activities, anywhere in Qantum's Market Area:
>
> a)  hire, recruit, or attempt to recruit, for any radio station, any person employed by Qantum at any time during the previous twelve (12) months;

B0357319

7

        b)     solicit or accept any radio advertising business from any of Qantum's current, former or prospective accounts (a prospective account is defined as any entity Qantum has actively solicited, planned to solicit or sold advertising time to during the twelve (12) months before Employee's termination of employment with Qantum); or

        c)     enter into, engage in, be employed by, be connected to or consult for any radio station business within Qantum's Market Area in a <u>Sales,</u> or managerial position.

27.     The Non-Compete Agreement provided that any successor or assignee of Qantum was authorized to enforce the Non-Compete Agreement as if the name of such successor or assignee replaced Qantum throughout the Non-Compete Agreement.

28.     Linn recently terminated her employment with Qantum and accepted a position with Qantum's competitor, Tiger Communications.

29.     Tiger Communications operates certain radio stations in the Auburn/Opelika, Alabama area, which fall within Qantum's Market Area defined by the Non-Compete Agreement.

30.     Linn's actions were taken in contravention to and in violation of the provisions of the Non-Compete Agreement and constitute a material breach of the Non-Compete Agreement.

B0357319

8

31. Upon information and belief, Linn was actively solicited by Kennedy, her former supervisor at Qantum, and Tiger Communications to resign her position with Qantum and to accept employment with Tiger Communications, thereby breaching her contractual agreement with Qantum.

32. Kennedy and Tiger Communications knew of the existence of the Non-Compete Agreement between Qantum and Linn.

33. Despite its knowledge of the Non-Compete Agreement, Kennedy and Tiger Communications intentionally and deliberately solicited Linn to resign her position with Qantum and accept employment with Tiger Communications, thereby intentionally interfering in the contractual relationship that existed between Qantum and Linn.

34. Kennedy and Tiger Communications solicited Linn to resign her position with Qantum and accept employment with Tiger Communciations without regard to the rights of Qantum under the Non-Compete Agreement and with the intent that Linn breach the Non-Compete Agreement.

35. Linn's actions caused damage to Qantum and continue to cause damage to Qantum to the extent Linn's actions are ongoing and to the extent Linn remains employed with Tiger Communications.

**D.    Qantum's Contractual Relationships with Kennedy**

B0357319

9

36. On or about January 22, 2003, Kennedy entered into an Employment Agreement with Root. The Employment Agreement provided, among other things, a Non-Compete Covenant and a Non-Solicitation Covenant.

37. The Non-Compete Covenant between Root and Kennedy prevented Kennedy from:

a) Entering into, engaging in, being employed by, being connected to, or consulting for, any radio, television or cable broadcasting facility in a capacity involving duties similar to those performed under this Agreement.

b) Soliciting or accepting any broadcast facility advertising business from any of Root's current, former or prospective accounts (a prospective account defined as any entity Root has actively solicited, planned to solicit, or provided services to, during the twelve (12) months before Employee's termination of employment with Root).

c) For a period of one (1) year after Employee's termination of employment with Root for whatever reason, Employee shall not enter the employ of a business which is a current account of Root unless Employee receives Root's advance written consent.

The Non-Compete Covenant provided for a Restrictive Period of one (1) year following termination of employment.

38. The Non-Solicitation Agreement between Root and Kennedy provided as follows:

B0357319

10

> Employee covenants that, during the Restrictive Period, Employee will not knowingly, directly or indirectly, without the consent of Root (i) employ or retain as an independent contractor any Person who, at any time during the twelve-month period ending on the date of termination of the Employee's employment with Root, was employed or retained by Root, or (ii) solicit such Person to terminate such Person's employment or retention by Root for the purpose of becoming employed or retained by Employee or any other Person to perform the same or similar services related to the activities that such Person performed for Root or their successors or assigns.

39. Effective July 2, 2003, Qantum purchased 100% of the limited partnership interests of Root. As part of the sale, Root assigned its rights and liabilities to Qantum, including the rights established by the Employment Agreement between Root and Kennedy.

40. Shortly following the sale, Qantum investigated certain questionable and unauthorized conduct undertaken by Kennedy during his employment with Root and Qantum. As a result of the investigation, on August 4, 2003, Kennedy resigned his employment with Qantum.

41. As part of the resignation, Qantum and Kennedy entered into Settlement Agreement and Release of All Claims ("Settlement Agreement"), in which Kennedy acknowledged that he engaged in certain actions and activities that were unauthorized by his employers and which were violative of company policies and procedures, including without limitation prohibitions against unethical behavior. Kennedy further acknowledged that his actions and activities were arguably violative of the laws of the State of Alabama.

B0357319

11

42. Kennedy admitted that his actions and activities rose to the level of a terminable offense for cause under his Employment Agreement and caused damage and injury to Qantum, including financial losses and damages.

43. As part of the Settlement Agreement, Qantum agreed, among other things, to forbear from instituting legal action against Kennedy for damages arising from his unauthorized actions. Qantum also agreed to waive the Non-Compete Covenant in the Employment Agreement. The Settlement Agreement did not affect any other provisions of the Employment Agreement.

44. The parties to the Settlement Agreement contractually agreed that "[a]ny action for breach of the terms of this Agreement shall be commenced in a court of competent jurisdiction within Fairfield County, Connecticut where jurisdiction and venue shall lie unchallenged by either party."

45. Following his termination with Qantum, Kennedy accepted employment with Tiger Communications in a position substantially similar to the position he held at Root and Qantum.

46. As previously stated, Chenoweth and Linn recently terminated their employment with Qantum and accepted positions with Tiger Communications.

B0357319

47. Upon information and belief, Kennedy and Tiger Communications actively solicited Chenoweth and Linn to resign their employment with Qantum and accept employment with Tiger Communications.

48. Kennedy's actions were violative of the Non-Solicitation Covenant in his Employment Agreement with Qantum and constitute a material breach of his Employment Agreement and the Settlement Agreement.

49. Kennedy's actions caused damage to Qantum and continue to cause damage to Qantum to the extent Kennedy's actions are ongoing and to the extent Chenoweth and Linn remain employed with Tiger Communications.

50. Qantum is in contractual privity with Chenoweth and Linn.

51. At all materials times, Kennedy was aware of the contractual agreements between Chenoweth, Linn and Qantum.

52. Kennedy, with full knowledge and intent, solicited Chenoweth and Linn to breach the contracts each of them had with Qantum by resigning their positions with Qantum and accepting positions with Tiger Communications.

53. By doing so, Kennedy intentionally interfered with the contractual agreements between Chenoweth, Linn and Qantum.

54. Kennedy's actions proximately caused damage and injury to Qantum.

B0357319

13

## COUNT TWO (FRAUD IN THE INDUCEMENT)

1-53.  Qantum repeats and realleges paragraphs 1 through 53 of Count One as paragraphs 1 through 53 of Count Two, as if fully set forth herein.

54.  Kennedy entered into the Settlement Agreement with Qantum with full knowledge of the continued enforceability of certain of the provisions of his Employment Agreement with Qantum, including the Non-Solicitation Agreement.

55.  Kennedy fraudulently induced Qantum to enter into the Settlement Agreement by concealing his intent to violate the terms of the Non-Solicitation Agreement after the execution of the Settlement Agreement.

56.  Qantum reasonably relied on Kennedy's representations that certain of the provisions of the Employment Agreement, including the Non-Solicitation Agreement, would remain in force and effect.

57.  Kennedy's actions proximately caused damage and injury to Qantum.

## COUNT THREE (BREACH OF CONTRACT - SETTLEMENT AGREEMENT)

1-56.  Paragraphs 1 though 56 of Count Two are hereby made paragraphs 1 through 56 of Count Three, as if fully set forth herein.

57.  On or about August 4, 2003, Qantum and Kennedy entered into the Settlement Agreement described above.

B0357319

14

58. Kennedy's actions, as described above, including the solicitation of Chenoweth and Linn to resign their positions with Qantum and accept positions with Tiger Communications, constitute a material breach of the terms of the Settlement Agreement.

59. Kennedy's breach of the Settlement Agreement has proximately caused damage and injury to Qantum.

## COUNT FOUR (BREACH OF CONTRACT - EMPLOYMENT AGREEMENT)

1-58. Paragraphs 1 through 58 of Count Three are hereby made paragraphs 1 through 58 of Count Four, as if fully set forth herein.

59. On or about January 22, 2003, Root and Kennedy entered into the Employment Agreement described above, the rights under which were subsequently assigned to Qantum.

60. Kennedy's actions, as described above, including the solicitation of Chenoweth and Linn to resign their positions with Qantum and accept positions with Tiger Communications, constitute a material breach of the terms of the Employment Agreement.

61. Pursuant to the terms of the Employment Agreement, Kennedy is obligated to pay all costs and expenses incurred by Qantum in enforcing the terms of the Employment Agreement, including court costs and attorney's fees.

62. Kennedy's breach of the Employment Agreement has proximately caused damage and injury to Qantum.

B0357319

## COUNT FIVE (DECLARATORY JUDGMENT AND PRELIMINARY INJUNCTION)

1-61. Paragraphs 1 through 61 of Count Four are hereby made paragraphs 1 through 61 of Count Five, as if fully set forth herein.

62. Kennedy's actions constitute a material breach of the Settlement Agreement, thereby voiding the Settlement Agreement or making it voidable at the election of Qantum.

63. Qantum requests that the Court declare the Settlement Agreement void and release Qantum of its obligations thereunder, including Qantum's agreement to waive the enforcement of the Non-Compete Agreement contained in Kennedy's Employment Agreement.

64. Qantum further requests the Court to impose immediate equitable relief in the nature of a preliminary injunction to provide the following relief:

    (a) Enjoining and restraining Kennedy, and all the persons in active concert and participation with him, pending a final hearing and determination of this cause, from continuing his employment with Tiger Communications.

    (b) Enjoining and restraining Kennedy, and all the persons in active concert and participation with him, pending a final hearing and determination of this cause, from contacting or soliciting Qantum's current, former or prospective accounts;

    (c) Requiring Kennedy to make an accounting to this Court in the form of a sworn affidavit as to the nature and extent of any contact or solicitation made by Kennedy since accepting employment with Tiger Communications of Qantum's current, former or prospective accounts and

B0357319

16

                Qantum's current, former or prospective employees and representatives; and

    (d)    Such other relief as may be equitable under the premises.

65.    Qantum seeks injunctive relief on the grounds that:

    (a)    Unless restrained by this Court, Qantum justifiably fears that Kennedy may perform such acts sought by Qantum to be prohibited;

    (b)    Such action by Kennedy has and will result in irreparable harm, injury and loss to Qantum in that Kennedy's actions have and will result in substantial damage to its business and business relationships.

    (c)    The issuance of the said preliminary injunction will not cause undue inconvenience or hardship to Kennedy, but will prevent irreparable injury to Qantum;

    (d)    The issuance of a preliminary injunction Order will preserve the status quo and is consistent with the remedies and relief available to Qantum under the parties' agreement.

66.    Qantum has no adequate remedy at law.

B0357319

## PRAYER FOR RELIEF

WHEREFORE, Qantum demands the following relief:

As to Counts One through Four:

1. Money damages;

2. Punitive damages;

3. Attorney's fees pursuant to the terms of the Employment Agreement; and

4. Such other and further relief as the Court deems just and proper.

As to Count Five:

1. An order enjoining and restraining Kennedy and all persons in active concert with him from continuing his employment with Tiger Communciations;

2. An order enjoining and restraining Kennedy and all persons in active concert with him from contacting or soliciting Qantum's current, former or prospective customers and accounts;

3. An order enjoining and restraining Kennedy and all persons in active concert with him from contacting or soliciting Qantum's current, former or prospective employees or representatives;

B0357319

18

4. An accounting of all contacts and solicitations made by Kennedy of Qantum's current, former or prospective accounts and Qantum's current, former or prospective employees;

5. Such other and further relief as the Court deems just and proper.

PLAINTIFFS,

BY: _____
Richard E. Castiglioni
DISERIO MARTIN O'CONNOR &
  CASTIGLIONI LLP #102036
One Atlantic Street
Stamford, CT 06901
(203)358-0800

B0357319

19

| | |
|---|---|
| RETURN DATE: FEBRUARY 17, 2004 ) | SUPERIOR COURT |
| ) | |
| Qantum Communications Corporation, a ) | JUDICIAL DISTRICT OF STAMFORD/ |
| corporation; Qantum of Auburn, ) | NORWALK AT STAMFORD |
| LLC, a limited liability company; Qantum ) | |
| Acquisition, LLC, a limited liability ) | |
| company, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| John F. Kennedy, an individual; ) | |
| ) | |
| Defendant. ) | JANUARY 21, 2004 |

**STATEMENT OF AMOUNT IN DEMAND**

The amount in demand is in excess of FIFTEEN THOUSAND ($15,000.00) DOLLARS, exclusive of interest and costs.

BY: _____
Richard E. Castiglioni
DISERIO MARTIN O'CONNOR &
  CASTIGLIONI LLP #102036
One Atlantic Street
Stamford, CT 06901
(203) 358-0800

B0357319

20