UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| QANTUM COMMUNICATIONS CORPORATION, QANTUM OF AUBURN, LLC, AND QANTUM ACQUISITION, LLC, | : : : : : | CIVIL ACTION NO. 3:04 CV 0315 (CFD) |
| Plaintiffs, | : : | |
| V. | : : | |
| JOHN F. KENNEDY, | : : | JULY 20, 2005 |
| Defendant. | : | |

MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT JOHN F. KENNEDY'S MOTION TO TRANSFER

*I. INTRODUCTION*

On or about January 21, 2004, plaintiffs Qantum Communications Corporation, Qantum of Auburn, LLC and Qantum Acquisition, LLC (collectively referred to as "Plaintiffs") commenced this action[1] against defendant John F. Kennedy ("Kennedy"), a former employee of Qantum of Auburn, LLC ("Qantum Auburn"), alleging in part that he, along with his new employer, Tiger Communications ("Tiger"), improperly solicited two of Qantum Auburn's employees, Meghan Chenoweth ("Chenoweth") and Stacy Linn ("Linn"), in violation of both his Employment Agreement and a settlement agreement he executed with Qantum Auburn, which led to their resignation from Qantum Auburn and subsequent employment with Tiger, Qantum Auburn's competitor. Plaintiffs have brought six counts against Kennedy which include: Breach

---

[1] This action was originally commenced in the Connecticut Superior Court Judicial District of Stamford/Norwalk. On or about February 25, 2005, Kennedy removed the case to this Court.

1

of Contract (Employment Agreement); Breach of Contract (Settlement Agreement); Intentional Interference with Business and Contractual Relations; Fraud in the Inducement; Injunctive Relief; and Declaratory Judgment. (See Complaint dated January 21, 2004.)

On or about February 12, 2004, Plaintiffs commenced two related actions in the United States District Court for the Middle District of Alabama Eastern Division[2] against Chenoweth and Linn for breach of their Non-Compete Agreements.[3] (See Complaints attached hereto as Exhibits A and B.) On or about March 3, 2004, Plaintiffs commenced two more related actions also in the Middle District of Alabama Eastern Division against Amelia Tuck Turner ("Turner"), another former Qantum Auburn employee who Plaintiffs allege was also solicited by Kennedy for breach of her Non-Compete Agreement,[4] and Tiger for intentional interference with business and contractual relations.[5] (See Complaints attached hereto as Exhibits C and D.) The Chenoweth, Linn and Turner actions were consolidated for the purposes of all pretrial proceedings and were ultimately dismissed by the Court on March 14, 2005.[6] The action against Tiger is still pending in the Middle District of Alabama Eastern Division.

Despite the fact that the same operative facts are at issue here as in the case pending against Tiger in the Middle District of Alabama, Plaintiffs elected to commence this action in Connecticut, a clearly improper venue. Alabama is where all of the operative facts occurred. It

---

[2] In addition to the Plaintiffs in this action, the Plaintiffs in the related actions also include Qantum of Auburn License Company, LLC and Qantum Holding, LLC.
[3] Qantum Communications Corp. v. Chenoweth, 3:04 CV 119 (CSC); Qantum Communications Corp. v. Linn, 3:04 CV 118 (CSC)
[4] The Complaint in this action does not mention Turner.
[5] Qantum Communications Corp. et al. v. Amelia Tuck Turner, 3:04 CV 191 (CSC); Qantum Communications Corp. et al. v. Tiger Communications, Inc., 3:04 CV 190 (CSC).
[6] The court dismissed these three actions on the grounds that the court did not have subject matter jurisdiction over Chenoweth, Linn and Turner (See Memorandum Opinion and Order attached hereto as Exhibit H.) Qantum has since commenced an action against Chenoweth, Linn and Turner in the Circuit Court for Lee County, Alabama, entitled Qantum Communications Corporation, et al. v. Amelia Tuck Turner, Meghan Chenoweth and Stacey Linn bearing Docket No. CV-2005-185

is where Kennedy resides and works and where Qantum Auburn is licensed to do business and owns and operates numerous radio stations for which Kennedy and those he allegedly solicited previously worked. It is also the location of Tiger's principal place of business, and where it owns and operates radio stations where Kennedy and those he allegedly solicited now work. Alabama is where all of the material witnesses to this action work and reside and where all of the relevant documents are located. In contrast, the only ties this action has to Connecticut is that the location of Plaintiffs' principal place of business, and one of the contracts at issue which was executed between Kennedy and Plaintiff Qantum Auburn only, has a forum selection clause designating Fairfield County Connecticut as the location where an action for its breach must be commenced. These connections, however, are not enough to warrant adjudication of this action in Connecticut, as the balance of factors to be considered pursuant to 28 U.S.C. §1404(a) mandates that for the convenience of the parties and witnesses, and in the interest of justice, this case be transferred to the United States District Court Middle District of Alabama Eastern Division.

## II. *FACTS*

Kennedy is a resident of the State of Alabama and has been for all but four years of his life. (Kennedy Aff. ¶3 (attached hereto as Exhibit E).) In January 2003, he entered into an Employment Agreement ("Employment Agreement") with Root Communications Group, L.P. ("Root"), a Delaware Partnership authorized to do business in Auburn, Alabama and West Point, Georgia. (See Employment Agreement attached hereto as Exhibit F; Kennedy Aff. ¶4 (Ex. E).) The Employment Agreement was negotiated and executed in Alabama. (Kennedy Aff. ¶6 (Ex. E); Complaint ¶36.) At the time the Employment Agreement was executed, Root was the owner

3

and operator of radio stations in the United States including several stations serving the Auburn, Alabama and West Point, Georgia areas. (Kennedy Aff. ¶4 (Ex. E).) Pursuant to the terms of the Employment Agreement, Kennedy was employed as a Station Manager/Director of Sales for Root's Auburn, Alabama and West Point, Georgia radio stations. (Exhibit F at ¶7; Kennedy Aff. ¶4 (Ex. E).) The Employment Agreement contains both a covenant not to compete and a covenant not to solicit. (Complaint ¶¶36-38.)

The covenant not to solicit states as follows:

> Employee covenants that, during the Restrictive Period,[7] Employee will not knowingly, directly or indirectly, without the consent of Root (i) employ or retain as an independent contractor any Person who, at any time during the twelve-month period ending on the date of termination of the Employee's employment with Root, was employed or retained by Root, or (ii) solicit such Person to terminate such Person's employment or retention by Root for the purpose of becoming employed or retained by Employee or any other Person to perform the same or similar services related to the activities that such Person performed for Root or their successors or assigns.

(Ex. F at ¶16; Kennedy Aff. ¶5; Complaint ¶38.)

Pursuant to its terms, the Employment Agreement is governed by the laws of the State of Pennsylvania, and any action for breach of this Agreement is to be commenced within Montgomery County, Pennsylvania. (See Ex. F at ¶ 28.)

Plaintiffs are the owners and operators of radio stations. Their principal place of business is Stamford, Connecticut and Qantum Acquisition Co., LLC ("Qantum Acquisition") and Qantum Auburn are registered to do business in the State of Alabama. (See corporate details from Alabama Secretary of State attached hereto as Exhibit G.) On July 2, 2003, Plaintiffs purchased 100% of the limited partnership interests of Root, which included ownership of the

---

[7] The Restrictive Period is defined as a period of one year following termination of employment.

4

Alabama and Georgia radio stations for which Kennedy worked as Station Manager and Director of Sales. (Complaint ¶39; Kennedy Aff. ¶7 (Ex. E)) As part of the sale, Root also assigned its rights and liabilities to Plaintiffs, including the Employment Agreement. (Id.) Kennedy carried out his duties and responsibilities as Station Manager and Director of Sales on behalf of both Root and Qantum Auburn in Alabama and Georgia. (Kennedy Aff. ¶8 (Ex. E).) At no time during his employment with Root or Qantum Auburn did he perform any work in the State of Connecticut. (Id.)

In August 2003, Kennedy resigned from his position with Qantum Auburn after an investigation concerning activities which occurred while he was employed with both Root and Qantum Auburn. (Kennedy Aff. ¶9 (Ex. E).) Incident to his resignation, Kennedy and Qantum Auburn entered into a Settlement Agreement ("Settlement Agreement") (a copy of which was previously filed under seal pursuant to an order of this Court dated November 9, 2004) which was negotiated and executed in Alabama.[8] (Id.) Pursuant to the Settlement Agreement, Qantum Auburn agreed to waive both the non-compete and non-solicitation provisions contained in the Employment Agreement. (Settlement Agreement at 5.) Plaintiffs allege, however, that the Settlement Agreement did not affect any other provisions of the Employment Agreement, including the non-solicitation clause, all of which remained in full force and effect. (Complaint ¶43.) The Settlement Agreement is governed by the substantive law of the State of Alabama, but any action for breach of its terms is to be commenced in Fairfield County, Connecticut. (See Settlement Agreement at ¶12; Complaint ¶44.)

---

[8] Since a copy of the Settlement Agreement has already been filed under seal, Kennedy will not include another copy as an exhibit to this Motion, as it would be superfluous to file two copies under seal.

5

Following his resignation, Kennedy accepted a position as Director of Sales with Tiger. (Kennedy Aff. ¶10 (Ex. E).) Tiger is an Alabama corporation with its principal place of business in Auburn, Alabama. (Id.) Tiger is a competitor of Qantum Auburn's, as it also operates radio stations in the Auburn, Alabama area. (Id.) Tiger has no ties to the State of Connecticut and is not licensed to do business here. (Id.) As Director of Sales for Tiger, Kennedy performs the duties and responsibilities incident to that position in Alabama. (Kennedy Aff. ¶11 (Ex. E).) Several months after Kennedy joined Tiger, two other individuals employed by Qantum Auburn as salespersons, Meghan Chenoweth ("Chenoweth") and Stacey Linn ("Linn"), resigned from Qantum Auburn and accepted employment with Tiger. (Complaint ¶47.) Both Chenoweth and Linn reside and work in Alabama. (Kennedy Aff. ¶14; Complaint ¶¶5-6.) Plaintiffs allege that Kennedy, along with Tiger, solicited these individuals, causing them to terminate their employment with Qantum Auburn to accept positions with Tiger. (Complaint ¶47.) Plaintiffs also allege that the solicitation of these individuals by Kennedy was in violation of the non-solicitation clause contained in the Employment Agreement and thereby constitutes a material breach of that agreement. (Complaint ¶48.) Plaintiffs also allege that the aforementioned solicitation constitutes a material breach of the Settlement Agreement as well, for Kennedy executed the Settlement Agreement knowing that the non-solicitation clause contained in the Employment Agreement continued to be enforceable. (Complaint ¶48.) Plaintiffs further aver that they relied upon Kennedy's representations that certain provisions of the Employment Agreement would remain in full force and effect when entering into the Settlement Agreement. (Complaint ¶52.) Plaintiffs maintain that by concealing his intent to violate the non-solicitation clause of the Employment Agreement after the execution of the Settlement Agreement, Kennedy

Case 3:04-cv-00321-SRU Document 39 Filed 07/20/2005 Page 6 of 18

6

fraudulently induced Qantum Auburn to enter into the Settlement Agreement. (Complaint ¶54.) In 2004, Plaintiffs commenced this action, as well as four related actions in the United States District Court District of Alabama Eastern Division in an effort to bar its former employees from working for its competitor, Tiger.

### III. ARGUMENT

### THE PERTINENT CRITIERIA UNDER § 1404 (a) FAVOR TRANSFER OF THIS ACTION TO THE MIDDLE DISTRICT OF ALABAMA EASTERN DIVISION.

Pursuant to 28 U.S.C. § 1404(a), a District Court may transfer any civil action to any other district or division where it might have been brought for the convenience of parties and witnesses, or in the interest of justice. See 28 U.S.C §1404(a). The purpose of §1404(a) is to "prevent the waste of 'time, energy and money' and to 'protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" Van Dusen v. Barrack, 376 U.S. 612, 616 (1964) (quoting Continental Gram Co. v. Barge FBI-585, 356 U.S, 19-26-27 (1960)). "Motions to transfer lie within the broad discretion of the district court and are determined upon notions of convenience and fairness on a case by case basis." Bridgeport Machines, Inc. v. Alamo Iron Works, Inc., 76 F. Supp. 2d 214, 216 (D. Conn. 1999) (quoting In re Cuyahoga Equip. Corp., 980 F 2d 110, 117 (1992)) See also BRM Indus., Inc. v. Mazak Corp., 42 F. Supp. 2d 176, 180 (D. Conn. 1999).

In determining a Motion to Transfer under §1404(a), the Court must consider the following factors: (1) plaintiff's choice of forum; (2) where the operative facts occurred; (3) the convenience of the parties; (4) the convenience of the material witnesses; (5) the availability of process to compel the appearance of unwilling witnesses; and (6) other considerations affecting

7

the interests of justice. See Van Ommeren Bulk Shipping, B.V. v. Tagship, Inc., 821 F. Supp. 848, 850 (D. Conn. 1993) (citing to Executone Info. Sys., Inc. v. BDO Seidman, 1993 WL 37111, at *2 (S.D.N.Y. Feb. 9, 1993)); Miller v. Meadowlands Car Imports, Inc., 822 F. Supp. 61, 66 (D. Conn. 1993). In the present case, a balancing of these factors demonstrates that transfer is warranted.

### A. *This Action Could Have Been Brought In The District Of Alabama.*

The United States District Court, Middle District of Alabama Eastern Division, has jurisdiction over Plaintiffs and Kennedy. While Plaintiffs' principal place of business is Stamford Connecticut, Plaintiffs Qantum Auburn and Qantum Acquisition are licensed to do business in the State of Alabama, as both own and operate several radio stations there. Thus, the court has jurisdiction over them. Similarly, the court also has jurisdiction over Kennedy, as he resided and works in the state. In addition, all of the operative facts and issues in the present case took place in Alabama. Thus, this action might have been brought there.

### B. *The Forum Selection Clause Contained In Settlement Agreement Does Not Preclude Transfer.*

Presumably the sole reason Plaintiffs commenced this litigation in Connecticut is because they have brought a claim against Kennedy for breach of the Settlement Agreement, which, pursuant to the forum selection clause contained in that agreement, must be brought in Fairfield County, Connecticut. (See Settlement Agreement at 4, ¶12.) While a forum selection clause is a significant factor in a transfer analysis, it is not a dispositive one. See BRM Indus., Inc. v. Mazak Corp., 42 F. Supp. 2d 176, 180 (D. Conn. 1999). If the balance of other factors considered by the Court warrants transfer, the forum selection clause should be disregarded. Id. (refusing to transfer the case to Kentucky in accordance with the forum selection clause where

8

inconvenience to third party witnesses, the fact that all operative facts took place in Connecticut and all equipment which was the subject of the dispute was located there, outweighed the significance of the forum selection clause). In the present case, where all of the operative facts occurred in Alabama, Alabama is a convenient forum for all parties, it is the location of all third party witnesses and it is in the interest of judicial economy, Alabama is the logical venue for this action See supra, III(C), III(D), III(E) and III(G).

Furthermore, absent clear language of exclusive jurisdiction, a forum selection clause will be deemed to be permissive rather than mandatory. See Nagel v. The Residential Resort, LLC, 2004 WL 288808, at *2 (D. Conn Feb 6, 2004) (attached as Exhibit L) (quoting John Boutaki and Son, Wines and Spirits, S.A. v. Attiki Imps. And Distribs. Inc., 22 F.3d 51, 52 (2d Cir. 1994) ("The general rule in cases containing forum selection clauses is that when only jurisdiction is specified, the clause will generally not be enforced without some further language indicating the parties' intent to make jurisdiction exclusive").

In the present case, the forum selection clause simply states "[a]ny action for breach of the terms of this Agreement shall be commenced in a court of competent jurisdiction within Fairfield County Connecticut where jurisdiction and venue shall be unchallenged by either party." As it does not contain reference to Connecticut as having exclusive jurisdiction, this clause is nothing more than a consent-to-jurisdiction clause which "merely empowers a court to hear a particular case, but does not require that the case be heard in the particular forum See Id. (citing to Aktiengesellschaft K8V Schientific Co., Inc. v. Bayerische Motoren Werke, 314 F.3d 494, 500 (10th Cir. 2002)) (holding that a forum selection clause is permissive and not mandatory in the absence of terms such as "exclusive," "sole" or "only.").

9

In addition, the Settlement Agreement containing the forum selection clause was executed only between Kennedy, an Alabama resident, and Qantum Auburn, an entity which while listing its principal place of business as Stamford, Connecticut, is not licensed to do business in Connecticut, but only licensed to do business in Alabama

In addition, Plaintiffs have also alleged that Kennedy breached the non-solicitation clause in the Employment Agreement. The Employment Agreement, however, contains its own forum selection clause, pursuant to which any action for breach of said agreement must be commenced in Montgomery County, Pennsylvania. By pursuing this cause of action here, Plaintiffs have already waived one forum selection clause

Finally, the Settlement Agreement was executed by Kennedy under duress. (Kennedy Aff. ¶9.) Qantum Auburn would not permit him to seek the advice of counsel before executing the agreement. (Id.) Accordingly, Kennedy was unable to obtain the advice of counsel as to the ramifications of agreeing to a forum clause. Therefore, under these circumstances, it would be patently unfair to enforce this clause, forcing Kennedy to litigate this action in Connecticut.

C. *All Of The Operative Facts Occurred In Alabama.*

There is a strong presumption in favor of a plaintiff's choice of forum unless the defendant can show by clear and convincing evidence that private and public interest factors favor trial in another forum. See Cavanaugh v. Bluebeard's Castle, Inc., 83 F. Supp. 2d 284, 287 (D. Conn. 1999). The District of Connecticut has stated that the plaintiff's choice of forum is given less weight where the operative facts of the case have little connection with that forum. In Alden v. Eazypower Corp., 294 F. Supp. 2d 233, 237 (D. Conn. 2003), the Court stated:

> Although the Plaintiff has chosen to litigate this action in Connecticut, the alleged infringement and packaging claims are nationwide. As a result the only exclusive

10

connection that this cause of action has with Connecticut is that Plaintiff resides here Therefore, the Plaintiff's choice of forum is not controlling. Id. at 237.

Similarly, in the present action, no operative facts occurred in Connecticut. The Employment Agreement and Settlement Agreement were both negotiated and executed in Alabama. (Kennedy Aff ¶¶6, 9 (Ex. E).) Both Chenoweth and Linn, the individuals who Plaintiffs allege were solicited by Kennedy in violation of the Employment Agreement, reside and work in Alabama. (Id. at ¶14.) In addition, Tiger, the company for which Kennedy and these individuals now work, and which Plaintiffs allege participated in the alleged solicitation with Kennedy, is also located in Alabama (Id. at ¶10.) Furthermore, any representations made by Kennedy in connection with his execution of the Settlement Agreement were made in Alabama. (Id. at ¶9.) The absence of any operative facts occurring in Connecticut therefore weigh heavily in favor of transfer.

### D. *Alabama Is A Convenient Forum For All Parties.*

The District of Connecticut is an inconvenient forum for Kennedy as he resides and works in Alabama. (Kennedy Aff. ¶¶3, 11 (Ex. E).) At no point in carrying out his duties at Tiger has he traveled to Connecticut nor does he anticipate doing so in the near future. (Id. at ¶12.) Were Kennedy required to defend this action in Connecticut, it would require a great deal of travel which would cause him financial hardship. (Id. at ¶19.) It would be far easier and significantly more cost effective for Kennedy, an individual with limited resources, to defend this action in Alabama. (Id.)

Transferring this case to Alabama would be equally convenient for Plaintiffs Kennedy, Chenoweth and Linn are all former employees of Qantum Auburn. While Qantum Auburn's filing with the Secretary of State of Alabama states that its principal place of business is

11

Stamford, Connecticut, Qantum Auburn is not licensed to do business in Connecticut. Thus, its connection to this state is tenuous at best. Thus, it appears that Connecticut and Alabama are equally convenient locations for litigation for this entity. Qantum Auburn is, however, licensed to do business in Alabama and owns and operates several radio stations there, stations for whom Kennedy, Chenoweth and Linn worked. Thus, Qantum Auburn's employees/agents are already located in Alabama, and it is not inconvenient for it to participate in litigation there.

While Plaintiff Qantum Communications Corporation's principal place of business is located in Stamford, Connecticut and it is licensed to do business there, it does not appear to have any connection to this case, other than the fact that it may be the parent corporation of Qantum Auburn and Qantum Acquisition.

Plaintiff Qantum Acquisition no longer exists, having merged into Qantum Holding, LLC on March 4, 2004. Qantum Holding, LLC is licensed to do business in Alabama, and thus has sufficient ties there and would not be inconvenienced by having to participate in litigation there.

In addition, Plaintiffs have already commenced a federal court action against Tiger in Alabama, as well as an Alabama state court action against Chenoweth, Linn and Turner, and thus it has already retained Alabama counsel and clearly expects to travel to Alabama in connection with these proceedings. Therefore transferring this action to Alabama would not inconvenience Plaintiffs, nor would it burden them financially. In fact, it would likely benefit Plaintiffs, for transfer would eliminate the need for additional counsel in Connecticut, and save on expenses associated with discovery in connection with multiple proceedings.

### E. All Material Third Party Witnesses Are Located In Alabama And Process Is Not Available To Compel Their Presence In The District Of Connecticut.

The convenience of witnesses is the most important factor governing the decision to transfer a case. See, e.g., Hernandez v. Graebel Van Lines, 761 F. Supp. 983, 988 (E.D.N.Y. 1991) (convenience of witnesses is "probably the single most important factor in the analysis"); Gundle Lining Constr. Corp. v. Fireman's Fund Ins. Co., 844 F. Supp. 1163, 1166 (S.D. Tex. 1994) ("The relative convenience of witnesses is often recognized as the most important factor to be considered in ruling on a motion under § 1404 (a)"). In deciding between competing jurisdictions, the balancing of conveniences is left to the sound discretion of the trial court. See, e.g., William Gluckin & Co. v. Int'l Playtex Corp., 407 F. 2d 177, 178 (2d Cir. 1968); Alden Corp. v. Eazypwer Corp., 294 F. Supp. 2d 233, 236 (D. Conn. 2003).

In Counts Three and Four of the Complaint, Plaintiffs have alleged that Kennedy, along with Tiger, solicited two of its employees, Chenoweth and Linn, in violation of the non-solicitation provision of his Employment Agreement. (Complaint ¶¶58, 60.) In order to refute these allegations, Kennedy will need the testimony of Chenoweth and Linn both of whom reside in Alabama. (Kennedy Aff. ¶14 (Ex. E).) Chenoweth and Linn will both testify that Kennedy did not solicit them to join Tiger. (Id. at ¶¶15-16.) In addition, Kennedy also anticipates calling Thomas M. Hayley, Tiger's President, to testify. Mr. Hayley is a resident of Alabama and works for Tiger in Alabama. (Id. at ¶14.) Mr. Hayley will testify that Kennedy did not solicit Chenoweth and Linn to join Tiger, and that he was the person who communicated with Chenoweth and Linn about employment opportunities with the company and that he was ultimately the person who extended offers of employment to them. (Id. at 17.) None of the

13

aforementioned witnesses, or their employer Tiger, are parties to this action. Each one is a third-party witness whose attendance at trial cannot be compelled by subpoena in the District of Connecticut. As such, this is a significant factor warranting transfer of this action to the United States District Court Middle District of Alabama. See Cavanaugh v. Bluebeard's Castle, Inc., 83 F. Supp.2d 284, 287-288 (D. Conn. 1999) (granting motion to transfer in part because non-party witnesses resided more than 100 miles from the courthouse and as such their attendance could not be compelled by subpoena).

In addition to the numerous third-party witnesses located in Alabama, most if not all of the documents relevant to this case are located there as well. Documents concerning or relating to Tiger's hiring of Chenoweth and Linn are within the custody and control of Tiger, and are located at its offices in Auburn, Alabama. Similarly, any written communications between Kennedy and Chenoweth, or Kennedy and Linn would also be found in Alabama where all of these individuals reside. Documents relating to the Employment Agreement and Settlement Agreement are also located there.

### F. Settlement Agreement Is To Be Interpreted In Accordance With Alabama Law.

The Settlement Agreement contains a provision requiring that the agreement be interpreted in accordance with Alabama law. (See Settlement Agreement at 4, ¶12.) Clearly, a federal court sitting in diversity is experienced in applying the law of foreign jurisdictions and thus this alone is an insufficient basis for transfer under §1404 (a). The existence of an Alabama choice of law provision when considered in light of all other connections this action has to Alabama, however, is simply yet another reason transfer is a logical course of action.

14

### G. *Transfer Is In The Interests Of Justice And Judicial Economy.*

It is also in the interests of justice and judicial economy that this action be transferred to the Middle District of Alabama Eastern Division. The "interests of justice" factor under §1404(a) "is broad enough to cover the particular circumstances of each case, which in sum indicate that the administration of justice will be advanced by a transfer." Alden, 294 F. Supp 2d at 237 (internal quotations and citations omitted). There is a "strong policy favoring the litigation of related claims in the same tribunal so that: (1) pretrial discovery can be conducted more efficiently; (2) duplicitous litigation can be avoided, thus saving time and expense for the parties and witnesses and better serving the public interest; and (3) inconsistent results can be avoided." See L'Amy, Inc. v. LePage, 2000 WL 565483, at *7 (attached as Exhibit I) (D. Conn March 30, 2000) (quoting Conners v. Lexington Insur. Co., 666 F. Supp. 434, 464 (E.D.N.Y. 1987)). See also Nieves, 700 F. Supp at 773.

The action commenced by Plaintiffs in the Middle District of Alabama Eastern Division is based on the same operative facts as this action. Thus, discovery in the two cases is likely to be duplicative. As noted in the 26(a)(1) disclosure served by Tiger in the Alabama action (a copy of which is attached hereto as Exhibit J), most of the same witnesses will be needed in both the Alabama and Connecticut actions. If this action were to be transferred to Alabama, it would likely be consolidated with the Tiger action for at least the purpose of pre-trial discovery, as was the case with the Chenoweth, Linn and Turner actions. Thus, deponents would then only need to be deposed in connection with one action rather than two, thereby saving significant time and expense for parties and witnesses alike.

While both the Alabama and Connecticut actions were commenced in 2004, both are in the very beginning stages of discovery. In the Alabama action, the parties' 26(f) report was just approved by the Court in May and contains a discovery deadline of September 8, 2005 (attached hereto as Exhibit K). While Plaintiffs have served discovery in that action, no depositions have been taken to date. In this action, Plaintiff only recently served Defendant with Requests for Production, which are presently due on June 30, 2005. Kennedy has filed a 30-day Motion for Extension of Time, dated June 29, 2005, in which to respond to these requests, which is pending before the Court. If Kennedy's motion is granted, discovery will remain at the initial stages in this action as well, thereby making transfer at this juncture a prudent option.

In addition to the advantages transfer would bring with regard to the consolidation of pre-trial discovery, it would also help to ensure that inconsistent results are not reached in the two actions. Since four suits have been filed in Alabama, the Alabama Court is already familiar with the issues presented by Qantum's Complaint. As such, the administration of justice would be advanced by transferring this action to Alabama.

## IV. *CONCLUSION.*

In conclusion, this Court should transfer this case to the United States District Court for the Middle District of Alabama Eastern Division for the following reasons: (1) all of the operative facts occurred in Alabama; (2) Alabama is a convenient forum for all parties; (3) all material third-party witnesses are located in Alabama and process is not available to compel their presence in the District of Connecticut; (4) it is in the interest of judicial economy and will allow for consolidation of the two actions for the purposes of pretrial discovery, thus saving both

parties and witnesses time and money; and (5) it is in the interest of justice, as it will help ensure that inconsistent results will not be reached in the two actions.

For the foregoing reasons, Kennedy respectfully requests that the Court grant his motion to transfer venue.

By /s/
Scott R. Lucas, Esq. (ct00517)
Claire E. Ryan, Esq. (ct22145)
*Attorneys for defendant John F. Kennedy*
MARTIN, LUCAS & CHIOFFI, LLP
177 Broad Street
Stamford, CT 06901
Phone: (203) 973-5200
Fax: (203) 973-5250
slucas@mlc-law.com
cryan@mlc-law.com

17

## *CERTIFICATE OF SERVICE*

This is to certify that on this 20th day of July 2005, a copy of the foregoing was mailed, first class, postage prepaid, to:

Richard E. Castiglioni, Esq.
Scott M. Harrington, Esq.
Diserio Martin O'Connor & Castiglioni, LLP
One Atlantic Street
Stamford, CT 06901-2427

_____
Scott R. Lucas

18