# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT FOR THE**
**MIDDLE DISTRICT OF ALABAMA**
**EASTERN DIVISION**

2004 FEB 12 P 1: 35

FILED

Qantum Communications Corporation, a )
corporation; Qantum of Auburn, LLC, a )
limited liability company; Qantum )
Acquisition Company, LLC, a limited )
liability company )
)
    Plaintiff, )
)
v. )
)
Meghan Chenoweth, an individual; )
)
    Defendant. )

FEB 12 2004

CLERK
U. S. DISTRICT COURT
MIDDLE DIST. OF ALA.

CIVIL ACTION NO. 04 - W -119 - E

**DEMAND FOR JURY TRIAL**

## COMPLAINT

Plaintiffs Qantum Communications Corporation, Qantum of Auburn, LLC and

Qantum Acquisition Company, LLC ("Qantum"), by and through their attorneys, allege the

following:

### I. PARTIES AND NON-PARTIES

1.    Plaintiff Qantum Communications Corporation is a Delaware corporation

having its principal place of business in Stamford, Connecticut. Plaintiff Qantum of Auburn,

LLC is a limited liability company organized under the laws of the State of Delaware and

having no members who are citizens of the State of Alabama. Plaintiff Qantum Acquisition

Company, LLC is a limited liability company organized under the laws of the State of

Delaware and having no members who are citizens of the State of Alabama.

2.    Upon information and belief, Defendant Meghan Chenoweth ("Chenoweth") is an Alabama resident.

3.    Upon information and belief, non-party John F. Kennedy ("Kennedy") is an Alabama resident.

4.    Upon information and belief, non-party Tiger Communications, Inc. is an Alabama corporation with its principal place of business in Tallassee, Alabama.

## II. JURISDICTION AND VENUE

5.    This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1332 as there is complete diversity of citizenship between the parties and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

## III. FACTUAL ALLEGATIONS

6.    Through this action, Qantum seeks to redress a wrong of a most fundamental nature: Chenoweth, with full knowledge and intent, breached the contractual obligations established by a Non-Compete Agreement between the parties to this action. Chenoweth's actions caused damage to Qantum and continue to cause damage to Qantum to the extent Chenoweth's actions have ongoing effects on the business and business relationships of Qantum.

7.    On or about September 1, 1999, in consideration of continued employment, Chenoweth entered into a Non-Compete Agreement with Root Communications Group, L.P.

("Root"), the owner of various radio stations in and around the Auburn/Opelika, Alabama area.

8.    At all materials times, Chenoweth was employed as a salesperson for Root, and later, Qantum. The Non-Compete Agreement between Root and Chenoweth placed certain reasonable restrictions on Chenoweth's ability to compete with Root within a defined Market Area. The Non-Compete Agreement defined Root's Market Area as "the territory within a 75 mile radius of the city(ies) of license and/or the transmitter facility(ies) of the radio station(s) in which [Chenoweth] has worked for [Root]."

9.    As part of the Non-Compete Agreement, Chenoweth acknowledged that Root had legitimate business interests to protect, including, among other things, valuable business information, substantial relationships with specific prospective and existing sales accounts, sales account good will associated with extraordinary or specialized training of its employees, and promotion of Root's business practice through its established name in the radio industry.

10.    The Non-Compete Agreement between Root, as employer, and Chenoweth, as employee, provided as follows:

> "Unless Employee receives Root's advance written waiver as described in paragraph 8 below, during his employment with Root and for a period of six (6) months thereafter, whatever the reason for Employee's termination, Employee shall not, either directly or indirectly, either on his/her own behalf or on behalf of another business, engage in the following activities, or assist other in such activities, anywhere in Root's Market Area:

> a)   hire, recruit, or attempt to recruit, for any radio station, any person employed by Root at any time during the previous twelve (12) months;
>
> b)   solicit or accept any radio advertising business from any of Root's current, former or prospective accounts (a prospective account is defined as any entity Root has actively solicited, planned to solicit or sold advertising time to during the twelve (12) months before Employee's termination of employment with Root); or
>
> c)   enter into, engage in, be employed by, be connected to or consult for any radio station within Root's Market Area.

11.   The Non-Compete Agreement provided that any successor or assignee of Root was authorized to enforce the Non-Compete Agreement as if the name of such successor or assignee replaced Root throughout the Non-Compete Agreement.

12.   Effective July 2, 2003, Qantum purchased 100% of the limited partnership interests of Root. As part of the sale, Root assigned its rights and liabilities to Qantum, including the rights established by the Non-Compete Agreement with Chenoweth.

13.   After the purchase, Chenoweth became employed with Qantum as a salesperson. For a period of time thereafter, Qantum and Chenoweth acted in accordance with their respective obligations under the Non-Compete Agreement assigned to Qantum. Qantum has always acted in accordance with its contractual obligations to Chenoweth.

B0356657                                    4

14.     Chenoweth recently terminated her employment with Qantum and accepted a position with Qantum's competitor, Tiger Communications. Tiger Communications operates certain radio stations in the Auburn/Opelika, Alabama area, which are located within Root's Market Area defined by the Non-Compete Agreement. Chenoweth's actions were taken in contravention to and in violation of the provisions of the Non-Compete Agreement and constitute a material breach of the Non-Compete Agreement.

15.     Upon information and belief, Chenoweth was actively solicited by Kennedy and Tiger Communications to resign her position with Qantum and accept employment with Tiger Communications, thereby breaching her contractual agreement with Qantum.

16.     Qantum advised Chenoweth by letter of December 23, 2003, that it considered her employment with Tiger Communications as a breach of the Non-Compete Agreement.

17.     Chenoweth's actions caused damage to Qantum and continue to cause damage to Qantum to the extent Chenoweth's actions are ongoing and to the extent Chenoweth remains employed with Tiger Communications.

## IV. CAUSES OF ACTION

## COUNT ONE (BREACH OF CONTRACT AGAINST CHENOWETH)

18.     Qantum realleges all prior paragraphs of the Complaint as if set out herein.

19.     By accepting employment with Tiger Communications of a position substantially the same as the position she had with Root and Qantum, Chenoweth breached the Non-Compete Agreement.

B0356657                                    5

20.   Chenoweth's actions have proximately caused damage and injury to Qantum, including substantial economic harm to Qantum and injury to Qantum's business and business relationships.

WHEREFORE, Qantum respectfully demands compensatory, incidental and consequential damages against Chenoweth in an amount to exceed $75,000, exclusive of interest and costs.

## COUNT TWO (PRELIMINARY INJUNCTION)

21.   Qantum realleges all prior paragraphs of the Complaint as if set out herein.

22.   Qantum requests the Court to impose immediate equitable relief in the nature of a preliminary injunction to provide the following relief:

(a)   Enjoining and restraining Chenoweth, and all the persons in active concert and participation with her, pending a final hearing and determination of this cause, from continuing her employment with Tiger Communications.

(b)   Enjoining and restraining Chenoweth, and all the persons in active concert and participation with her, pending a final hearing and determination of this cause, from contacting or soliciting Qantum's current, former or prospective accounts as defined by the Non-Compete Agreement;

(c)   Requiring Chenoweth to make an accounting to this Court in the form of a sworn affidavit as to the nature and extent of any contact or solicitation made by Chenoweth since accepting employment with Tiger Communications of Qantum's current, former or prospective accounts as defined by the Non-Compete Agreement; and

B0356657                                                6

      (d)     Such other relief as may be equitable under the premises.

23.    Qantum seeks injunctive relief on the grounds that:

      (a)     Unless restrained by this Court, Qantum justifiably fears that Chenoweth may perform such acts sought by Qantum to be prohibited;

      (b)     Such action by Chenoweth has and will result in irreparable harm, injury and loss to Qantum in that Chenoweth's actions have and will result in substantial damage to its business and business relationships.

      (c)     The issuance of the said preliminary injunction will not cause undue inconvenience or hardship to Chenoweth, but will prevent irreparable injury to Qantum;

      (d)     The issuance of a preliminary injunction Order will preserve the status quo and is consistent with the remedies and relief available to Qantum under the parties' agreement.

## V. PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Qantum demands judgment against Chenoweth in an amount to exceed $75,000, exclusive of interest and costs, plus all other relief permitted by law, all costs of this action and all attorney's fees incurred by Qantum, together with such further and different relief to which Qantum is entitled.

## QANTUM DEMANDS TRIAL BY STRUCK JURY

J. Bentley Owens, III
Bryan O. Balogh
Attorneys for Plaintiffs

B0356657

7

OF COUNSEL:
STARNES & ATCHISON LLP
Seventh Floor, 100 Brookwood Place
Post Office Box 598512
Birmingham, Alabama, 35259-8512
(205) 868-6000


DEFENDANT'S ADDRESS:
Meghan Chenoweth
905 Veterans Parkway
Opelika, AL 36801

B0356657

**EXHIBIT B**

RECEIVED

**IN THE UNITED STATES DISTRICT COURT FOR THE**

2004 FEB 12 P 1: 34    **MIDDLE DISTRICT OF ALABAMA**
                                            **EASTERN DIVISION**    FILED

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | |
|---|---|
| Qantum Communications Corporation, a ) | FEB 1 2 2004 |
| corporation; Qantum of Auburn, LLC, a ) | |
| limited liability company; Qantum ) | CLERK |
| Acquisition Company, LLC, a limited ) | U. S. DISTRICT COURT |
| liability company ) | MIDDLE DIST. OF ALA. |
| ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | CIVIL ACTION NO. 04 - S - 118 - E |
| Stacey Linn, an individual; ) | |
| ) | |
|     Defendant. ) | |

**DEMAND FOR JURY TRIAL**

## COMPLAINT

Plaintiffs Qantum Communications, Qantum of Auburn, LLC, and Qantum

Acquisition, LLC ("Qantum"), by and through their attorneys, allege the following:

### I. PARTIES AND NON-PARTIES

1.    Plaintiff Qantum Communications Corporation is a Delaware corporation

having its principal place of business in Stamford, Connecticut. Plaintiff Qantum of Auburn,

LLC is a limited liability company organized under the laws of the State of Delaware and

having no members who are citizens of the State of Alabama. Plaintiff Qantum Acquisition

1

Company, LLC is a limited liability company organized under the laws of the State of

Delaware and having no members who are citizens of the State of Alabama.

    2.    Upon information and belief, Defendant Stacey Linn ("Linn") is an Alabama

resident.

    3.    Upon information and belief, non-party John F. Kennedy ("Kennedy") is an

Alabama resident.

    4.    Upon information and belief, non-party Tiger Communications, Inc. is an

Alabama corporation with its principal place of business in Tallassee, Alabama.

## II. JURISDICTION AND VENUE

    5.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332 as

there is complete diversity of citizenship between the parties and the amount in controversy

exceeds the sum of $75,000.00, exclusive of interest and costs.

## III. FACTUAL ALLEGATIONS

    6.    Through this action, Qantum seeks to redress a wrong of a most fundamental

nature: Linn, with full knowledge and intent, breached the contractual obligations established

by a Non-Compete Agreement between the parties to this action. Linn's actions caused

damage to Qantum and continue to cause damage to Qantum to the extent Linn's actions

have ongoing effects on the business and business relationships of Qantum.

B0357615                                    2

7.    In consideration of the benefits of employment, Linn entered into a Non-Compete Agreement with Qantum of Auburn, LLC, the owner of various radio stations in and around the Auburn/Opelika, Alabama area.

8.    At all materials times, Linn was employed as a salesperson for Qantum. The Non-Compete Agreement between Qantum and Linn placed certain reasonable restrictions on Linn's ability to compete with Qantum within a defined Market Area. The Non-Compete Agreement defined Qantum's Market Area as "the territory within a 75 mile radius of the city(ies) of license and/or the transmitter facility(ies) of the radio station(s) in which [Linn] has worked for Qantum."

9.    As part of the Non-Compete Agreement, Linn acknowledged that Qantum had legitimate business interests to protect, including, among other things, valuable business information, substantial relationships with specific prospective and existing sales accounts, sales account good will associated with extraordinary or specialized training of its employees, and promotion of Qantum's business practice through its established name in the radio industry.

10.   The Non-Compete Agreement between Qantum, as employer, and Linn, as employee, provided as follows:

> "Unless Employee receives Qantum's advance written waiver as described in paragraph 8 below, during his employment with Qantum and for a period of six (6) months thereafter, whatever the reason for Employee's termination, Employee shall not, either directly or indirectly, either on his/her own behalf or on behalf of another business, engage in the following activities, or

assist other in such activities, anywhere in Qantum's Market Area:

      a)     hire, recruit, or attempt to recruit, for any radio station, any person employed by Qantum at any time during the previous twelve (12) months;

      b)     solicit or accept any radio advertising business from any of Qantum's current, former or prospective accounts (a prospective account is defined as any entity Qantum has actively solicited, planned to solicit or sold advertising time to during the twelve (12) months before Employee's termination of employment with Qantum); or

      c)     enter into, engage in, be employed by, be connected to or consult for any radio station business within Qantum's Market Area in a Sales, or managerial position.

11.     The Non-Compete Agreement provided that any successor or assignee of Qantum was authorized to enforce the Non-Compete Agreement as if the name of such successor or assignee replaced Qantum throughout the Non-Compete Agreement.

12.     Linn was employed with Qantum as a salesperson.

13.     For a period of time thereafter, Qantum and Linn acted in accordance with their respective obligations under the Non-Compete Agreement assigned to Qantum. Qantum has always acted in accordance with its contractual obligations to Linn.

14.     Linn recently terminated her employment with Qantum and accepted a position with Qantum's competitor, Tiger Communications, as a salesperson. Tiger Communications

operates certain radio stations in the Auburn/Opelika, Alabama area, which are located within Qantum's Market Area defined by the Non-Compete Agreement. Linn's actions were taken in contravention to and in violation of the provisions of the Non-Compete Agreement and constitute a material breach of the Non-Compete Agreement.

15.    Upon information and belief, Linn was actively solicited by Kennedy and Tiger Communications to resign her position with Qantum and accept employment with Tiger Communications, thereby breaching her contractual agreement with Qantum.

16.    Qantum advised Linn by letter of January 16, 2004, that it considered her employment with Tiger Communications as a breach of the Non-Compete Agreement.

17.    Linn's actions caused damage to Qantum and continue to cause damage to Qantum to the extent Linn's actions are ongoing and to the extent Linn remains employed with Tiger Communications.

## IV. CAUSES OF ACTION

## COUNT ONE (BREACH OF CONTRACT)

18.    Qantum realleges all prior paragraphs of the Complaint as if set out herein.

19.    By accepting employment with Tiger Communications of a position substantially the same as the position she had with Qantum, Linn breached the Non-Compete Agreement.

20.    Linn's actions have proximately caused damage and injury to Qantum, including substantial economic harm to Qantum and injury to Qantum's business and business relationships.

WHEREFORE, Qantum respectfully demands compensatory, incidental and consequential damages against Linn in an amount to exceed $75,000, exclusive of interest and costs.

### COUNT TWO (PRELIMINARY INJUNCTION)

21.    Qantum realleges all prior paragraphs of the Complaint as if set out herein.

22.    Qantum requests the Court to impose immediate equitable relief in the nature of a preliminary injunction to provide the following relief:

    (a)    Enjoining and restraining Linn, and all the persons in active concert and participation with her, pending a final hearing and determination of this cause, from continuing her employment with Tiger Communications.

    (b)    Enjoining and restraining Linn, and all the persons in active concert and participation with her, pending a final hearing and determination of this cause, from contacting or soliciting Qantum's current, former or prospective accounts as defined by the Non-Compete Agreement;

    (c)    Requiring Linn to make an accounting to this Court in the form of a sworn affidavit as to the nature and extent of any contact or solicitation made by Linn since accepting employment with Tiger Communications of Qantum's current, former or prospective accounts as defined by the Non-Compete Agreement; and

    (d)    Such other relief as may be equitable under the premises.

23. Qantum seeks injunctive relief on the grounds that:

    (a)    Unless restrained by this Court, Qantum justifiably fears that Linn may perform such acts sought by Qantum to be prohibited;

    (b)    Such action by Linn has and will result in irreparable harm, injury and loss to Qantum in that Linn's actions have and will result in substantial damage to its business and business relationships.

    (c)    The issuance of the said preliminary injunction will not cause undue inconvenience or hardship to Linn, but will prevent irreparable injury to Qantum;

    (d)    The issuance of a preliminary injunction Order will preserve the status quo and is consistent with the remedies and relief available to Qantum under the parties' agreement.

WHEREFORE, Quantum requests entry of equitable relief as requested.

## V. PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Qantum demands judgment against Linn in an amount to exceed $75,000, exclusive of interest and costs, plus all other relief permitted by law, all costs of this action and all attorney's fees incurred by Qantum, together with such further and different relief to which Qantum is entitled.

## QANTUM DEMANDS TRIAL BY STRUCK JURY

J. Bentley Owens, III
Bryan O. Balogh
Attorneys for Plaintiffs

B0357615

7

OF COUNSEL:
STARNES & ATCHISON LLP
Seventh Floor, 100 Brookwood Place
Post Office Box 598512
Birmingham, Alabama, 35259-8512
(205) 868-6000


DEFENDANT'S ADDRESS:
Stacey Linn
1123 5th Avenue
Opelika, AL 36801

**EXHIBIT C**

RECEIVED

**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA**

2004 MAR -3  A 10: 21

**EASTERN DIVISION**

FILED

Qantum Communications Corporation, a
corporation; Qantum of Auburn, LLC, a
limited liability company; Qantum
Acquisition Company, LLC, a limited
liability company; Qantum Holding, LLC
a limited liability company; Qantum of
Auburn License Company, LLC,
a limited liability company

      Plaintiffs,

v.

Amelia Tuck Turner, an individual;

      Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

MAR - 3 2004

CLERK
U. S. DISTRICT COURT
MIDDLE DIST. OF ALA.

CIVIL ACTION NO. 04-B-191-E

**JURY TRIAL REQUESTED**

## COMPLAINT

Plaintiffs Qantum Communications Corporation, Qantum of Auburn, LLC; Qantum

Acquisition Company, LLC; Qantum Holding, LLC and Qantum of Auburn License

Company, LLC ("Qantum"), by and through their attorneys, allege the following:

### I. PARTIES AND NON-PARTIES

1.    Plaintiff Qantum Communications Corporation is a Delaware corporation

having its principal place of business in Stamford, Connecticut. Plaintiff Qantum of Auburn,

LLC is a limited liability company organized under the laws of the State of Delaware and

having no members who are citizens of the State of Alabama. Plaintiff Qantum Acquisition

Company, LLC is a limited liability company organized under the laws of the State of Delaware and having no members who are citizens of the State of Alabama. Plaintiff Qantum Holding, LLC is a limited liability company organized under the laws of the State of Delaware and having no members who are citizens of the State of Alabama.   Plaintiff Qantum of Auburn License Company, LLC is a limited liability company organized under the laws of the State of Delaware and having no members who are citizens of the State of Alabama.

2.    Upon information and belief, Defendant Amelia Tuck Turner ("Turner") is an Alabama resident.

3.    Upon information and belief, non-party John F. Kennedy ("Kennedy") is an Alabama resident.

4.    Upon information and belief, non-party Tiger Communications, Inc. is an Alabama corporation with its principal place of business in Tallassee, Alabama.

## II. JURISDICTION AND VENUE

5.    This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1332 as there is complete diversity of citizenship between the parties and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

## III. FACTUAL ALLEGATIONS

6.    Through this action, Qantum seeks to redress a wrong of a most fundamental nature: Turner, with full knowledge and intent, breached the contractual obligations

established by a Non-Compete Agreement between the parties to this action. Turner's actions caused damage to Qantum and continue to cause damage to Qantum to the extent Turner's actions have ongoing effects on the business and business relationships of Qantum.

7. On or about June 14, 2002, in consideration of continued employment, Turner entered into a Non-Compete Agreement with Root Communications Group, L.P. ("Root"), the owner of various radio stations in and around the Auburn/Opelika, Alabama area.

8. At all materials times, Turner was employed as a salesperson for Root, and later, Qantum. The Non-Compete Agreement between Root and Turner placed certain reasonable restrictions on Turner's ability to compete with Root within a defined Market Area. The Non-Compete Agreement defined Root's Market Area as "the territory within a 75 mile radius of the city(ies) of license and/or the transmitter facility(ies) of the radio station(s) in which [Turner] has worked for Root."

9. As part of the Non-Compete Agreement, Turner acknowledged that Root had legitimate business interests to protect, including, among other things, valuable business information, substantial relationships with specific prospective and existing sales accounts, sales account good will associated with extraordinary or specialized training of its employees, and promotion of Root's business practice through its established name in the radio industry.

10. The Non-Compete Agreement between Root, as employer, and Turner, as employee, provided as follows:

B0370206                                3

"Unless Employee receives Root's advance written waiver as
described in paragraph 8 below, during his employment with
Root and for a period of six (6) months thereafter, whatever the
reason for Employee's termination, Employee shall not, either
directly or indirectly, either on his/her own behalf or on behalf
of another business, engage in the following activities, or assist
other in such activities, anywhere in Root's Market Area:

    a)    hire, recruit, or attempt to recruit, for any
radio station, any person employed by
Root at any time during the previous
twelve (12) months;

    b)    solicit or accept any radio advertising
business from any of Root's current,
former or prospective accounts (a
prospective account is defined as any
entity Root has actively solicited, planned
to solicit or sold advertising time to during
the twelve (12) months before Employee's
termination of employment with Root); or

    c)    enter into, engage in, be employed by, be
connected to or consult for any radio
station within Root's Market Area in a
Sales, or managerial position.

11.     The Non-Compete Agreement provided that any successor or assignee of Root

was authorized to enforce the Non-Compete Agreement as if the name of such successor or

assignee replaced Root throughout the Non-Compete Agreement.

12.     Effective July 2, 2003, Qantum purchased 100% of the limited partnership

interests of Root. As part of the sale, Root assigned its rights and liabilities to Qantum,

including the rights established by the Non-Compete Agreement with Turner.

B0370206

4

13.     After the purchase, Turner became employed with Qantum as a salesperson. For a period of time thereafter, Qantum and Turner acted in accordance with their respective obligations under the Non-Compete Agreement assigned to Qantum. Qantum has always acted in accordance with its contractual obligations to Turner.

14.     Turner recently terminated her employment with Qantum and accepted a position with Qantum's competitor, Tiger Communications. Tiger Communications operates certain radio stations in the Auburn/Opelika, Alabama area, which are located within Root's Market Area defined by the Non-Compete Agreement. Turner's actions were taken in contravention to and in violation of the provisions of the Non-Compete Agreement and constitute a material breach of the Non-Compete Agreement.

15.     Upon information and belief, Turner was actively solicited by Kennedy and/or Tiger Communications to resign her position with Qantum and accept employment with Tiger Communications, thereby breaching her contractual agreement with Qantum.

16.     Qantum advised Turner by letter of March 1, 2004, that it considered her employment with Tiger Communications as a breach of the Non-Compete Agreement.

17.     Turner's actions caused damage to Qantum and continue to cause damage to Qantum to the extent Turner's actions are ongoing and to the extent Turner remains employed with Tiger Communications.

## IV. CAUSES OF ACTION

### COUNT ONE (BREACH OF CONTRACT AGAINST TURNER)

18.    Qantum re-alleges all prior paragraphs of the Complaint as if set out herein.

19.    By accepting employment with Tiger Communications of a position substantially the same as the position she had with Root and Qantum, Turner breached the Non-Compete Agreement.

20.    Turner's actions have proximately caused damage and injury to Qantum, including substantial economic harm to Qantum and injury to Qantum's business and business relationships.

WHEREFORE, Qantum respectfully demands compensatory, incidental and consequential damages against Turner in an amount to exceed $75,000, exclusive of interest and costs.

### COUNT TWO (PRELIMINARY INJUNCTION)

21.    Qantum re-alleges all prior paragraphs of the Complaint as if set out herein.

22.    Qantum requests the Court to impose immediate equitable relief in the nature of a preliminary injunction to provide the following relief:

      (a)    Enjoining and restraining Turner, and all the persons in active concert and participation with her, pending a final hearing and determination of this cause, from continuing her employment with Tiger Communications.

      (b)    Enjoining and restraining Turner, and all the persons in active concert and participation with her, pending a final hearing and determination of this cause, from contacting

B0370206                                              6

or soliciting Qantum's current, former or prospective accounts as defined by the Non-Compete Agreement;

(c)    Requiring Turner to make an accounting to this Court in the form of a sworn affidavit as to the nature and extent of any contact or solicitation made by Turner since accepting employment with Tiger Communications of Qantum's current, former or prospective accounts as defined by the Non-Compete Agreement; and

(d)    Such other relief as may be equitable under the premises.

23.    Qantum seeks injunctive relief on the grounds that:

(a)    Unless restrained by this Court, Qantum justifiably fears that Turner may perform such acts sought by Qantum to be prohibited;

(b)    Such action by Turner has and will result in irreparable harm, injury and loss to Qantum in that Turner's actions have and will result in substantial damage to its business and business relationships.

(c)    The issuance of the said preliminary injunction will not cause undue inconvenience or hardship to Turner, but will prevent irreparable injury to Qantum;

(d)    The issuance of a preliminary injunction Order will preserve the status quo and is consistent with the remedies and relief available to Qantum under the parties' agreement.

## V. PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Qantum demands compensatory and punitive damages against Turner in an amount to exceed $75,000, exclusive of interest and costs, plus all other relief permitted by law, all costs of this action and all attorney's fees

B0370206                              7

incurred by Qantum, together with such further and different relief to which Qantum is
entitled.

## QANTUM DEMANDS TRIAL BY STRUCK JURY

J. Bentley Owens, III
Bryan O. Balogh
Attorneys for Plaintiffs

OF COUNSEL:
STARNES & ATCHISON LLP
Seventh Floor, 100 Brookwood Place
Post Office Box 598512
Birmingham, Alabama, 35259-8512
(205) 868-6000

DEFENDANT'S ADDRESS:
Amelia Tuck Turner
1141 Gentry Drive
Auburn, Alabama 36830

B0370206                                8

# EXHIBIT D

RECEIVED

2004 MAR -3  A 10: -2

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

**FILED**

MAR — 3 2004

CLERK
U. S. DISTRICT COURT
MIDDLE DIST. OF ALA.

| | |
|---|---|
| Qantum Communications Corporation, a corporation; Qantum of Auburn, LLC, a limited liability company; Qantum Acquisition Company, LLC, a limited liability company; Qantum Holding, LLC, a limited liability company; Qantum of Auburn License Company, LLC, a limited liability company | ) ) ) ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) ) |
| Tiger Communications, Inc., a corporation | CIVIL ACTION NO $04\text{-}\omega\text{-}190\text{-}E$ <br> **JURY TRIAL REQUESTED** |
| Defendant. | ) ) ) ) |

## COMPLAINT

Plaintiffs Qantum Communications Corporation; Qantum of Auburn, LLC; Qantum

Acquisition Company, LLC; Qantum Holding, LLC and Qantum of Auburn License

Company, LLC ("Qantum"), by and through their attorneys, allege the following:

### I. PARTIES AND NON-PARTIES

1. Plaintiff Qantum Communications Corporation is a Delaware corporation

having its principal place of business in Stamford, Connecticut. Plaintiff Qantum of Auburn,

LLC is a limited liability company organized under the laws of the State of Delaware and

having no members who are citizens of the State of Alabama. Plaintiff Qantum Acquisition

B0370222                                    1

Company, LLC is a limited liability company organized under the laws of the State of Delaware and having no members who are citizens of the State of Alabama. Plaintiff Qantum Holding, LLC is a limited liability company organized under the laws of the State of Delaware and having no members who are citizens of the State of Alabama. Plaintiff Qantum of Auburn License Company, LLC is a limited liability company organized under the laws of the State of Delaware and having no members who are citizens of the State of Alabama.

2. Upon information and belief, Defendant Tiger Communications, Inc. ("Tiger Communications") is an Alabama corporation with it principal place of business in Tallassee, Alabama.

3. Upon information and belief, non-party John F. Kennedy ("Kennedy") is an Alabama resident.

4. Upon information and belief, non-parties Meghan Chenoweth ("Chenoweth"), Stacey Linn ("Linn"), and Amelia Tuck Turner ("Turner") are Alabama residents.

## II. JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1332 as there is complete diversity of citizenship between the parties and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

### III. FACTUAL ALLEGATIONS

6.    Through this action, Qantum seeks to redress a wrong of a most fundamental nature: Tiger Communications unlawfully, unjustifiably and intentionally interfered with Qantum's business and contractual relationships with Chenoweth, Linn and Turner. Tiger Communications' actions caused damage to Qantum and continue to cause damage to Qantum to the extent the actions have ongoing effects on the business and business relationships of Qantum.

7.    On or about September 1, 1999, in consideration of continued employment, Chenoweth entered into a Non-Compete Agreement with Root Communications Group, L.P. ("Root"), the owner of various radio stations in and around the Auburn/Opelika, Alabama area.

8.    In consideration of the benefits of employment, Linn entered into a Non-Compete Agreement with Qantum of Auburn, LLC, the owner of various radio stations in and around the Auburn/Opelika, Alabama area.

9.    On or about June 14, 2002, in consideration of continued employment, Turner entered into a Non-Compete Agreement with Root, the owner of various radio stations in and around the Auburn/Opelika, Alabama area.

10.    At all materials times, Chenoweth and Turner were employed as salespersons for Root, and later, Qantum.

11.    At all material times, Linn was employed as a salesperson for Qantum.

12.    The Non-Compete Agreement between Root and Chenoweth placed certain reasonable restrictions on Chenoweth's ability to compete with Root within a defined Market Area. The Non-Compete Agreement defined Root's Market Area as "the territory within a 75 mile radius of the city(ies) of license and/or the transmitter facility(ies) of the radio station(s) in which [Chenoweth] has worked for [Root]."

13.    The Non-Compete Agreement between Qantum and Linn placed certain reasonable restrictions on Linn's ability to compete with Qantum within a defined Market Area. The Non-Compete Agreement defined Qantum's Market Area as "the territory within a 75 mile radius of the city(ies) of license and/or the transmitter facility(ies) of the radio station(s) in which [Linn] has worked for Qantum."

14.    The Non-Compete Agreement between Root and Turner placed certain reasonable restrictions on Turner's ability to compete with Root within a defined Market Area. The Non-Compete Agreement defined Root's Market Area as "the territory within a 75 mile radius of the city(ies) of license and/or the transmitter facility(ies) of the radio station(s) in which [Turner] has worked for Root."

15.    As part of their Non-Compete Agreements, Chenoweth, Linn and Turner acknowledged that Root had legitimate business interests to protect, including, among other things, valuable business information, substantial relationships with specific prospective and existing sales accounts, sales account good will associated with extraordinary or specialized

B0370222                                      4

training of its employees, and promotion of Root's business practice through its established

name in the radio industry.

     16.    The Non-Compete Agreement between Root, as employer, and Chenoweth, as

employee, provided as follows:

> "Unless Employee receives Root's advance written waiver as
> described in paragraph 8 below, during his employment with
> Root and for a period of six (6) months thereafter, whatever the
> reason for Employee's termination, Employee shall not, either
> directly or indirectly, either on his/her own behalf or on behalf
> of another business, engage in the following activities, or assist
> other in such activities, anywhere in Root's Market Area:

>     a)    hire, recruit, or attempt to recruit, for any
>             radio station, any person employed by
>             Root at any time during the previous
>             twelve (12) months;

>     b)    solicit or accept any radio advertising
>             business from any of Root's current,
>             former or prospective accounts (a
>             prospective account is defined as any
>             entity Root has actively solicited, planned
>             to solicit or sold advertising time to during
>             the twelve (12) months before Employee's
>             termination of employment with Root); or

>     c)    enter into, engage in, be employed by, be
>             connected to or consult for any radio
>             station within Root's Market Area.

     17.    The Non-Compete Agreement between Qantum, as employer, and Linn,

as employee, provided as follows:

> "Unless Employee receives Qantum's advance written waiver as
> described in paragraph 8 below, during his employment with

5

Qantum and for a period of six (6) months thereafter, whatever the reason for Employee's termination, Employee shall not, either directly or indirectly, either on his/her own behalf or on behalf of another business, engage in the following activities, or assist other in such activities, anywhere in Qantum's Market Area:

a) hire, recruit, or attempt to recruit, for any radio station, any person employed by Qantum at any time during the previous twelve (12) months;

b) solicit or accept any radio advertising business from any of Qantum's current, former or prospective accounts (a prospective account is defined as any entity Qantum has actively solicited, planned to solicit or sold advertising time to during the twelve (12) months before Employee's termination of employment with Qantum); or

c) enter into, engage in, be employed by, be connected to or consult for any radio station business within Qantum's Market Area in a <u>Sales</u>, or managerial position.

18. The Non-Compete Agreement between Root, as employer, and Turner, as employee, provided as follows:

"Unless Employee receives Root's advance written waiver as described in paragraph 8 below, during his employment with Root and for a period of six (6) months thereafter, whatever the reason for Employee's termination, Employee shall not, either directly or indirectly, either on his/her own behalf or on behalf of another business, engage in the following activities, or assist other in such activities, anywhere in Root's Market Area:

B0370222                                      6

         a)     hire, recruit, or attempt to recruit, for any radio station, any person employed by Root at any time during the previous twelve (12) months;

         b)     solicit or accept any radio advertising business from any of Root's current, former or prospective accounts (a prospective account is defined as any entity Root has actively solicited, planned to solicit or sold advertising time to during the twelve (12) months before Employee's termination of employment with Root); or

         c)     enter into, engage in, be employed by, be connected to or consult for any radio station within Root's Market Area in a <u>Sales</u>, or managerial position.

19.    Chenoweth's and Turner's Non-Compete Agreements provided that any successor or assignee of Root was authorized to enforce the Non-Compete Agreement as if the name of such successor or assignee replaced Root throughout the Non-Compete Agreement.

20.    Effective July 2, 2003, Qantum purchased 100% of the limited partnership interests of Root. As part of the sale, Root assigned its rights and liabilities to Qantum, including the rights established by the Non-Compete Agreements with Chenoweth, Linn and Turner.

21.    Chenoweth, Linn and Turner recently resigned their employment with Qantum and accepted positions with Qantum's competitor, Tiger Communications.

B0370222

7

22.    Tiger Communications operates certain radio stations in the Auburn/Opelika, Alabama area, which are located within Root's Market Area defined by the Non-Compete Agreement.

23.    Tiger Communications knew of Qantum's contractual relationships with Chenoweth, Linn and Turner before the above described resignations and actively interfered with the contractual relationships, thereby injuring and damaging Qantum.

24.    Despite knowledge of Qantum's contractual relationships with Chenoweth, Linn and Turner, Tiger Communications, by an through its agents and employees, including Kennedy, actively solicited Chenoweth, Linn and Turner to resign their positions with Qantum and accept employment with Tiger Communications.

25.    Qantum advised Chenoweth, Linn and Turner by letters of December 23, 2003, January 16, 2004 and March 1, 2004, respectively, that it considered their employment with Tiger Communications as a breach of the Non-Compete Agreements.

26.    Tiger Communications' actions caused damage to Qantum and continue to cause damage to Qantum to the extent Tiger Communications' actions are ongoing and to the extent Chenoweth, Linn and Turner remain employed with Tiger Communications.

### IV.  CAUSES OF ACTION

### COUNT ONE
### (INTERFERENCE WITH BUSINESS AND CONTRACTUAL RELATIONSHIPS)

27.    Qantum re-alleges all prior paragraphs of the Complaint as if set out herein.

28.    Qantum is in contractual privity with Chenoweth, Linn and Turner.

29.   At all material times, Tiger Communications knew of the contractual privity that existed between Qantum, on the one hand, and Chenoweth, Linn and Turner, on the other.

30.   Tiger Communications actively solicited, encouraged and promoted Chenoweth, Linn and Turner to ignore and breach their contractual obligations to Qantum and accept employment with Tiger Communications in violation of the terms of the above-described Non-Compete Agreements.

31.   Tiger Communications engaged in the above-described actions with the knowledge and/or belief that it would cause and/or was substantially certain to cause Chenoweth, Linn and Turner to resign their positions with Qantum in violation of the terms of the above-described Non-Compete Agreements.

32.   By its actions, Tiger Communications intentionally and unjustifiably interfered with Qantum's contractual and business relationships with Chenoweth, Linn and Turner.

33.   Tiger Communications' actions proximately caused damage and injury to Qantum, including substantial economic harm to Qantum and injury to Qantum's business and business relationships.

WHEREFORE, Qantum respectfully demands compensatory, punitive, incidental and consequential damages, including reasonable attorneys' fees, against Tiger Communications in an amount to exceed $75,000, exclusive of interest and costs.

B0370222                                    9

## COUNT TWO
## (PRELIMINARY INJUNCTION)

34. Qantum re-alleges all prior paragraphs of the Complaint as if set out herein.

35. Qantum requests the Court to impose immediate equitable relief in the nature

of a preliminary injunction to provide the following relief:

(a) Enjoining and restraining Tiger Communications, and all the persons in active concert and participation with Tiger Communications, pending a final hearing and determination of this cause, from continuing to employ Chenoweth, Linn and Turner.

(b) Enjoining and restraining Tiger Communications, and all the persons in active concert and participation with Tiger Communications, pending a final hearing and determination of this cause, from contacting or soliciting Qantum's current, former or prospective accounts as defined by the Non-Compete Agreement;

(c) Requiring Tiger Communications to make an accounting to this Court in the form of a sworn affidavit as to the nature and extent of any contact or solicitation made by Chenoweth, Linn and Turner since accepting employment with Tiger Communications of Qantum's current, former or prospective accounts as defined by the Non-Compete Agreement; and

(d) Such other relief as may be equitable under the premises.

36. Qantum seeks injunctive relief on the grounds that:

(a) Unless restrained by this Court, Qantum justifiably fears that Tiger Communications will continue to perform such acts sought by Qantum to be prohibited;

(b) Such action by Tiger Communications has and will result in irreparable harm, injury and loss to Qantum in that

B0370222

10

Tiger Communications' actions have and will result in substantial damage to its business and business relationships;

(c) The issuance of the said preliminary injunction will not cause undue inconvenience or hardship to Tiger Communications, but will prevent irreparable injury to Qantum;

(d) The issuance of a preliminary injunction Order will preserve the status quo and is consistent with the remedies and relief available to Qantum under the above-described Non-Compete Agreements.

## V. PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Qantum demands an award of compensatory and punitive damages against Tiger Communications in an amount to exceed $75,000, exclusive of interest and costs, plus all other relief permitted by law, all costs of this action and all attorney's fees incurred by Qantum, together with such further and different relief to which Qantum is entitled.

### QANTUM DEMANDS TRIAL BY STRUCK JURY

J. Bentley Owens, III
Bryan O. Balogh
Attorneys for Plaintiffs

OF COUNSEL:
STARNES & ATCHISON LLP
Seventh Floor, 100 Brookwood Place
Post Office Box 598512
Birmingham, Alabama, 35259-8512
(205) 868-6000

B0370222

11

DEFENDANT'S ADDRESS:
Tiger Communications, Inc.
2514 South College Street
Suite 104
Auburn, Alabama 36832

**EXHIBIT E**

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

QANTUM COMMUNICATIONS
CORPORATION, QANTUM OF
AUBURN, LLC, AND QANTUM
ACQUISITION, LLC,                        :
                                         :     **CIVIL ACTION NO.**
                    **Plaintiffs,**      :     **3:04 CV 0315 (CFD)**
                                         :
V.                                       :
                                         :
**JOHN F. KENNEDY,**                     :
                                         :     **July 11, 2005**
                    **Defendant.**       :

## AFFIDAVIT OF JOHN F. KENNEDY

STATE OF ALABAMA        )
                        )     ss:
COUNTY OF LEE           )

John F Kennedy, being duly sworn, hereby deposes and says:

1.  I am over the age of 18 and believe in the obligation of an oath to tell the truth

2.  The matters set forth herein are known to me of my own personal knowledge, and if called to testify as a witness, I could competently testify thereto.

3.  I currently reside at 1804 Piedmont Drive, Auburn, Alabama  I have resided in Alabama for most of my life with the exception of a four year period when I attended high school in Illinois.

4.  In January of 2003, I entered into an Employment Agreement with Root Communications Group, L P ("Root") pursuant to which I was to serve as

Station Manager and Director of Sales of radio stations owned and operated

by Root in the Auburn, Alabama and West Point, Georgia areas.

5.     The Employment Agreement contains a covenant not to solicit which states:

Employee covenants that, during the Restrictive Period,[1] Employee will not
knowingly, directly or indirectly, without the consent of Root (i) employ or
retain as an independent contractor any Person who, at any time during the
twelve-month period ending on the date of termination of the Employee's
employment with Root, was employed or retained by Root, or (ii) solicit such
Person to terminate such Person's employment or retention by Root for the
purpose of becoming employed or retained by Employee or any other Person
to perform the same or similar services related to the activities that such
Person performed for Root or their successors or assigns.

6.     The Employment Agreement was negotiated and executed in Alabama.

7.     On July 2, 2003, Plaintiffs Qantum Communications Corporation, Qantum

Auburn LLC and Qantum Acquisition LLC (collectively "Plaintiffs")

purchased 100% of the limited partnership interests of Root. As part of the

sale, Root assigned the Employment Agreement to Plaintiff Qantum Auburn,

LLC ("Qantum Auburn").

8.     All duties and responsibilities executed by me in accordance with the

Employment Agreement during my employment with Root and/or Qantum

Auburn were performed in Alabama or Georgia. At no time during my

employment with Root or Qantum Auburn did I perform any work in the State

of Connecticut.

9.     Following an investigation concerning activities which occurred while I was

employed with Root and Qantum Auburn, I entered into a Settlement

Agreement with Qantum Auburn which was negotiated and executed in

---

[1] The Restrictive Period is defined as a period of one year following termination of employment.

Alabama. Qantum Auburn would not permit me to seek the advice of counsel before executing this agreement and thus it was executed under duress.

10. Following my resignation from Qantum Auburn, I accepted a position as Director of Sales for Tiger Communications ("Tiger"), another owner and operator of radio stations in the Auburn, Alabama area. Tiger is an Alabama corporation with its principal place of business located at 2514 College St., Suite 104 Auburn, Alabama. Tiger has no ties to the State of Connecticut and is not licensed to do business there.

11. All duties and responsibilities executed by me in connection with my employment with Tiger were performed in Alabama.

12. At no time during my employment with Tiger have I traveled to Connecticut on business, nor do I anticipate doing so in the near future.

13. Plaintiffs have alleged that Tiger and I solicited two of its employees, Meaghan Chenoweth and Stacey Linn to come work for Tiger in violation of the Employment Agreement and Settlement Agreement. Tiger is not a party to this action, but it has been named as a Defendant in a related action commenced by Plaintiffs in the United States District Court Middle District of Alabama Eastern Division entitled Qantum Communications Corporation et al. v. Tiger Communications, Inc. 04-W-190-E. I am not a party to that action.

14. I did not solicit Meaghan Chenoweth or Stacey Linn to work for Tiger.

15. In addition to myself all of the material witnesses who I anticipate will testify at trial on my behalf in defense of this action reside and work in Alabama.

These witnesses include: Meaghan Chenoweth, Stacey Linn and Thomas M.
Hayley.

16. I expect that Ms. Chenoweth will testify that: (1) I did not solicit her to join
Tiger, and (2) that the person with whom she communicated about
employment with Tiger was its President, Thomas M. Hayley.

17. I expect that Ms. Linn will testify that: (1) I did not solicit her to join Tiger;
(2) she resigned from Qantum with the intent of pursuing employment outside
of the radio industry; (3) she did not have any communications with me from
the date I ceased employment with Qantum until after she began working for
Tiger; and (4) the person with whom she communicated about employment
with Tiger was Thomas M. Hayley

18. I expect that Mr. Hayley will testify that: (1) I did not solicit Ms. Chenoweth
and Ms. Linn to join Tiger; and (2) he was the individual who communicated
with Ms. Chenoweth and Ms. Linn about employment with Tiger and
ultimately was the person who extended offers of employment to them

19. All of the documents concerning the Employment Agreement, the Settlement
Agreement, and Tiger's employment of Ms. Chenoweth and Ms. Linn are
located in Alabama

20. I will likely suffer financial hardship if required to defend this action in
Connecticut, as I would be forced to incur expenses associated with travel for
depositions, consultations with counsel and trial. It would be much more
convenient for me to defend this action in Alabama.

John F. Kennedy

Subscribed and sworn to before me
this 14 day of July 2005.

Notary Public:
My Commission Expires

MY COMMISSION EXPIRES AUG. 9, 2008