# EXHIBIT I

Westlaw.

Not Reported in F.Supp.2d
2000 WL 565483 (D.Conn.)
**(Cite as: 2000 WL 565483 (D.Conn.))**

Page 1

Only the Westlaw citation is currently available

United States District Court, D. Connecticut.
L'AMY, INCORPORATED,
v.
Joseph J. LEPAGE et al.
**No. 3:99CV1013 AVC.**

March 30, 2000.

RULING ON THE DEFENDANTS' MOTIONS TO
DISMISS AND MOTIONS TO TRANSFER

COVELLO.

\*1 This is an action for damages and injunctive relief
brought pursuant to common law tenets concerning
breach of contract. The complaint alleges that the
defendants, Joseph J. LePage and Creative Optics,
acted in concert to breach both the confidentiality and
non-piracy provisions contained within LePage's
employment agreement with L'Amy Incorporated.

The defendants filed the within motions, pursuant to:
1) 28 U.S.C. § 1406, to dismiss for improper venue,
and 2) 28 U.S.C. § 1404(a) to transfer this case to the
United States District Court for the Eastern District
of Texas. The issues presented are: 1) whether a
forum selection clause confers proper venue in
Connecticut over LePage; 2) whether the Connecticut
Longarm Statute, Conn.Gen.Stat. § 33-929, confers
personal jurisdiction over Creative Optics; and 3)
whether the transfer of this case to Texas is
appropriate. For the reasons that follow, the motions
to dismiss are *denied* and the motions to transfer are
*denied*

*FACTS*

Examination of the complaint, the motions to
dismiss, the plaintiff's responses, and the supporting
affidavits discloses the following undisputed facts.

The plaintiff, L'Amy, Inc., hereinafter "L'Amy" is a
Delaware corporation with its principal place of
business in Connecticut. L'Amy is currently engaged
in the business of importing and distributing
ophthalmic frames on a nationwide basis. The
defendant, Joseph J. LePage, is a former employee of
L'Amy. The defendant, Creative Optics, Inc

hereinafter "Creative" currently employs LePage.
Creative is a business located in Arizona. Creative is
a major distributor of both eyewear and sunwear and
does business with two hundred and thirty-four
retailers throughout Connecticut

In July 1996, LePage began employment with
L'Amy as a sales representative. LePage at the time
signed an employment agreement, hereinafter
"Agreement," that contained a confidential
information covenant, non-piracy provision, and a
forum selection clause. The confidentiality provision
required LePage not to disclose any confidential
information kept by L'Amy to any outside
corporation or individual. The non-piracy provision
provided that for a six-month period following the
termination of LePage he would not solicit any of
L'Amy's customers Paragraph 24 of the forum
selection clause states:

> Jurisdiction. The Employee and L'Amy consent
> that if for any reason a dispute under this
> Agreement is not resolved through the use of DRI,
> more particularly described in Paragraph 18, it
> shall be resolved in the Superior Court of the State
> of Connecticut, Judicial District of Stamford
> Norwalk. Each of the parties consents to the
> jurisdiction of such court for all purposes, and each
> of the parties hereby waives the right of a jury trial
> (Exhibit A ¶ 24.) During the course of his
employment, LePage received L'Amy's confidential
information concerning customers, customer lists,
pricing information and the number, identity and
location of customers.

\*2 On December 11, 1998, LePage ended his
employment relationship with L'Amy. In November
of 1998, L'Amy alleges that LePage began
employment with Creative Optics L'Amy claims that
LePage immediately began soliciting L'Amy
customers for the benefit of Creative Optics.

On December 3, 1998, L'Amy notified LePage that
his current employment with Creative was in direct
violation of his employment agreement. In addition,
on December 3, 1998, L'Amy notified Creative that
LePage executed an employment agreement that
contained the "restrictive covenants."

On April 20, 1999, L'Amy filed the within complaint
in the Superior Court for the Judicial District at
Stamford-Norwalk. On May 27, 1999, LePage and

© 2005 Thomson/West No Claim to Orig. U.S. Govt. Works

Creative removed this matter to the United States district court for the district of Connecticut.

*STANDARD*

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(2) must be granted if the plaintiff fails to establish jurisdiction. A federal court sitting in diversity may exercise personal jurisdiction over a foreign defendant only if the forum state's long arm statute authorizes the exercise of jurisdiction, *Arrowsmith v. United Press Intl., 320 F.2d 219, 222-25 (2d Cir.1963)* (en banc); *Harris v. Wells, 832 F.Supp. 31, 34 (D.Conn.1993)*, and the statutory authority comports with the Due Process Clause of the Fourteenth Amendment. See *International Shoe Co., v. Washington, 326 U.S. 310, 316 (1945); Greene v. Sha-Na-Na, 637 F.Sup. 591, 595 (D.Conn.1986)*. It is the plaintiff's burden to establish that personal jurisdiction exists over the defendant. *Harris v. Wells, 832 F.Supp. 31, 34 (D.Conn.1993)*; 2A J. Moore & J. Lucas, Moore's Federal Practice 12.07 at pp. 12-69 (2d ed 1994).

A motion to dismiss pursuant to Federal Rule of Civil procedure 12(b)(3) involves a determination as to whether the plaintiff has properly established venue pursuant to *28 U.S.C. § 1391 (1988)* Section 1391(a) allows a civil action based upon diversity of citizenship to be brought in:

> 1) a judicial district where any defendant resides, if all the defendants reside in the same state; 2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property is situated, or; 3) a judicial district in which the defendants are subject to personal jurisdiction at the time the action is commenced, if there is no other district in which the action may otherwise be brought.

When venue is improper within the district, the district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought" *28 U.S.C. § 1406(a)(1988)* The district court may also transfer venue pursuant to *28 U.S.C. § 1404(a)(1988)*, which states: "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The determination of the propriety of a transfer under *§ 1404(a)* requires an "individualized, case-by-case consideration of convenience and fairness." *Van Dusen v. Barrack, 376 U.S. 612, 622*

*(1964)* The district court should consider the following factors such as: 1) the plaintiff's choice of forum; 2) where the operative facts occurred; 3) the convenience of the parties; 4) the convenience of the material witnesses; 5) the availability of process to compel the appearance of an unwilling witness, and 6) other considerations affecting the interest of justice. *Miller v. Meadowlands Inc., 822 F.Supp. 61 (D.Conn.1993)*

*DISCUSSION*

1. MOTION TO DISMISS FOR IMPROPER VENUE

I. LePage's Motion to Dismiss for Improper Venue

\*3 LePage argues that L'Amy's case should be dismissed pursuant to *§ 1406* due to improper venue Specifically, LePage argues that venue is improper because he is a resident of Texas, all the relevant facts took place in Texas and he has not performed any services in the state of Connecticut.

L'Amy responds that venue is proper because LePage consented to this forum when LePage signed the employment agreement with L'Amy, which contained the forum selection clause. Specifically, L'Amy argues that since LePage is not claiming that the enforcement of the clause is invalid due to fraud, unreasonableness, or that the clause is so overreaching that it would deprive him of his day in court, then the clause is enforceable.

In *M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10, 92 S.Ct. 1907, 1913, 32 L.Ed.2d 513 (1972)*, the United States Supreme Court concluded that forum selection clauses are prima facia valid and should be enforced unless the resisting party shows that enforcement would be unreasonable. Furthermore, the United States Supreme Court held that a court should "enforce a the forum selection clause unless it is clearly shown that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Id.* at 15, 92 S.Ct. at 1916 See also *Lescare Kitchens, Inc. v. Home Depot U.S.A., 1998 WL 720536 (D.Conn.1998)* (finding a forum selection clause valid where the plaintiff failed to argue that the clause was not obtained through fraud or overreaching). "This rule has been extended in this and other circuits to diversity and other non-admiralty cases." *Jones v. Weibrecht, 901 F.2d 17, 18 (2d Cir.1990)* See also *New Moon Shipping Co., LTD. v. Man B & W Diesel AG, 121 F.3d 24 (2d*

© 2005 Thomson/West No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d
2000 WL 565483 (D.Conn.)
(Cite as: 2000 WL 565483 (D.Conn.))

Cir.1997).

LePage has not argued that the forum selection clause is unjust, unreasonable, or obtained through fraud or overreaching. Since the forum selection clause is valid, LePage, through his signature, agreed that venue is proper in Connecticut.

The motion to dismiss as to LePage is denied.

II. Creative's Motion to Dismiss for Improper Venue

Creative argues that L'Amy's case requires dismissal pursuant to § 1406 for improper venue. Specifically, Creative argues that "Since the District Court of Connecticut does not satisfy any of the § 1391 requirements, venue is improper here and the Complaint should be dismissed in its entirety." Creative bases this argument on three points. First, neither of the defendants are residents of Connecticut. Second, the facts "clearly demonstrate that none of the events occurred in Connecticut; rather, the events or omissions giving rise to the action against Creative occurred, if at all, in Texas." Third, Creative argues that this court does not have personal jurisdiction because the necessary minimum contacts with Connecticut are absent.

L'Amy responds that the exercise of personal jurisdiction over Creative is appropriate because Creative transacts business in Connecticut thereby satisfying Connecticut's Longarm Statute. [FN1] Specifically, L'Amy argues that because Creative does significant business with two hundred and thirty-four Connecticut retailers, this fact is sufficient to satisfy the minimum contacts test required by constitutional due process.

> FN1. The plaintiff refers to the wrong Connecticut Longarm Statute. However, the court determined that the appropriate statute, Conn.Gen.Stat. 33-929, does extend to the defendant.

A. Connecticut Longarm Statute

*4 Under Connecticut law, there is a two-step process used to determine whether a foreign corporation is subject to personal jurisdiction. *Bensmiller v. E.I. Dupont de Nemours 7 Co.* 47 F.3d 79, 81 (2d Cir.1995) (citing *Greene v. Sha-Na-Na,* 637 F.Sup. 595 (D.Conn.1986)) First, the court must determine whether Connecticut's long arm statute reaches the corporation. Second, if the statute does reach the corporation then the court must determine

whether that exercise of jurisdiction offends due process. See *Bensmiller v. E.I. Dupont de Nemours 7 Co.,* 47 F.3d 79, 81 (2d Cir.1995).

Conn.Gen.Stat. § 33-929(f) states:
> Every foreign corporation shall be subject to suit in this state, by a resident of this state or by a person having a usual place of business in this state, whether or not such foreign corporation is transacting or has transacted business in this state and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows ... (3) *out of the production, manufacture or distribution of goods by such corporation with the reasonable expectation that such goods are to be used or consumed in this state and are so used or consumed, regardless of how or where the goods were produced, manufactured, marketed or sold or whether or not through the medium of independent contractors or dealers,*

*Id.* (emphasis added). Creative does transact business within Connecticut by selling its eyewear to two hundred and thirty-four Connecticut retailers. Since Creative sells its product to Connecticut retailers, it becomes subject to suit in Connecticut by reason of the provisions of C.G.S. § 33-929(f)(3).

B. Due Process

Creative next argues that it does not satisfy the second prong of the personal jurisdiction test. Specifically, Creative argues that "[B]ecause Creative does not have any office in Connecticut, and because none of its alleged actions in connection with Plaintiff took place in Connecticut" the necessary minimum contacts with Connecticut are absent." L'Amy responds that because Creative, "represents to the public that it provides eyewear on a nationwide basis, including the State of Connecticut" and "the defendant has two hundred and thirty-four (234) Creative Optics' Retailers in the State of Connecticut" then the defendant has "purposely availed itself" of the Connecticut forum. Specifically, L'Amy argues that Creative's conduct establishes the required minimum contacts with Connecticut.

In determining whether granting jurisdiction over a foreign corporation comports with the Constitutional notions of due process, the court utilizes a two prong test. "The due process clause of the Fourteenth Amendment permits a state to exercise personal jurisdiction over a non-resident defendant [1] with whom it has certain minimum contacts ... such that [2] the maintenance of the suit does not offend

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

traditional notions of fair play and substantial justice." *Kernan v. Kurz-Hastings,* 175 F.3d 236, 242 (2d Cir.1999) (citing *Calder v. Jones,* 465 U.S. 783, 788 (1984) (quoting *Milliken v. Myer,* 311 U.S. 457, 463 (1940), and *International Shoe Co. v. Washington,* 362 U.S. 310, 316 (1945))).

*5 The first part of the test, whether minimum contacts exist between Creative and Connecticut, directs the court to consider "the relationship among the defendant, the forum, and the litigation." *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 775 (1984) (citations omitted). Furthermore, the plaintiff "must ... show that [the defendant] 'purposefully availed' [himself] of the privilege of doing business in [the forum state] and that [the defendant] could foresee being 'haled into court' here." *Kernan v. Kurz-Hastings,* 175 F.3d 236, 242, 243 (2d Cir.1999) (citing *World Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980), and *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985)).

Here the record reflects that Creative sells its eyewear to two hundred and thirty-four individual Connecticut retailers. Creative's independent business relationships with such a plethora of separate Connecticut retailers clearly satisfies what, must be remembered, is a minimum contacts requirement. By selling it eyewear to Connecticut retailers, Creative availed itself of the privilege of doing business in the state and could, with that number of contacts in a retail context, reasonably expect to be haled, at some point, into a Connecticut court. Accordingly, venue is proper in this district under 28 U.S.C. § 1391(C). [FN2]

> FN2. 28 U.S.C. 1391(c) states: "For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced."

The motion to dismiss as to Creative is denied.

2 MOTION TO TRANSFER

I LePage's Motion to Transfer

LePage next argues that the court should transfer this case to the Eastern District of Texas. LePage does not state why this should be the case.

L'Amy does not respond to this argument.

In a motion to transfer, the moving party has the burden to establish that there should be a change of forum. *Combustion Engineering v. Nei Intern. Combustion,* 798 F.Sup. 100, 106 (D.Conn .1992). "The movant must support the motion with an affidavit containing 'detailed factual statements' explaining why the transferee forum is more convenient, including 'potential principal witnesses expected to be called and a general of the substance of their testimony.' " *New York Islanders Hockey Club, LLP , v. Comercia Bank,* 71 F.Sup.2d 10 115 (E.D.N.Y.1999).

When a court weighs all the relevant factors "... unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1946). LePage does not provide any evidence that would help the court weigh the factors in determining whether the transfer would serve the interests of justice. LePage failed to balance any of the various factors. Consequently, LePage has failed to satisfy this burden of showing that the transfer would serve the interests of justice.

The motion to transfer as to LePage is denied.

II. Creative's Motion to Transfer

Creative also argues that the court should transfer this case to the Eastern District of Texas because it "would provide greater convenience for the parties and the witnesses as well as serve the interest of justice." Specifically, Creative argues that there are several factors that militate in favor of the transfer. Those factors are 1) "Potential witnesses and other evidence are located in Texas" and 2) the operative facts occurred in Texas.

*6 L'Amy does not respond to Creative's arguments but does request that the court deny the motion to transfer since "venue in this action is proper."

"A court must give deference to a strong presumption in favor of the plaintiff's choice of forum, which presumption may be overcome only be clear and convincing evidence that private and public factors favor trial in the alternative forum." *Pitney Bowes, Inc. v. National Presort,* 33 F.Sup.2d 130, 131 (D.Conn.1998) (citing *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 255, 102 S.Ct 252, 70 L.Ed.2d 419 (1981)).

A. Convenience of the Parties

Not Reported in F.Supp.2d
2000 WL 565483 (D.Conn.)
**(Cite as: 2000 WL 565483 (D.Conn.))**

The first factor to consider is the convenience of the parties. Two of the three parties to this action reside in Texas. "[T]he Court should not use an Order to Transfer to do nothing more than shift the burden of inconvenience from one party to another." *Pitney Bowes, Inc., v. National Presort, Inc.,* 33 F.Sup.2d 130, 132 (D.Conn.1999) [W]here parties already agreed to a particular forum in which to litigate disputes, 'convenience to parties' weighs heavily in favor of hearing case in designated court." *Falconwood Financial Corp., v. Griffin,* 838 F.Sup. 836, 840 (S.D.N.Y.1993).

LePage agreed to the Connecticut forum when he signed the forum selection clause in his employment agreement. Therefore, the convenience of the parties weighs in favor of keeping the action in Connecticut.

B. Convenience of the Witnesses

The second factor to consider is the convenience of the witnesses. Creative claims that it will call LePage to testify. The convenience of LePage is not relevant since he is a party to this action. The Court can compel LePage to testify in Connecticut. Creative also claims that it will call employee Steven Reynolds to testify. Since Creative employs Reynolds then it could accommodate Reynolds' travel to Connecticut. *Bridgeport Machines, Inc. v. Alamo Iron works, Inc.,* 76 F.Sup.2d 214, 216 (D.Conn.1999) (Several of the witnesses listed were employees of the defendant, "therefore militating against claimed inconvenience since presumably [the defendant could accommodate these individuals' travel to Connecticut") Finally, Creative claims that it will call "any customer that Plaintiff claims Creative or LePage solicited." Creative did not name any customers or describe what their testimony would be. Furthermore, Creative did not argue that the customers would be unwilling to travel to Connecticut or that travel would cause extreme hardship. Creative has not proven that its witnesses would suffer an inconvenience.

C. Plaintiff's Choice of Forum

The third factor to consider is the plaintiff's choice of forum. L'Amy filed this action in the forum where it resides and maintains its principal place of business. This factor militates in favor of Connecticut.

D. Where the Operative Facts

The fourth factor for the court to examine is where the operative facts occurred. Creative claims that all the operative facts took place in Texas. Creative hired LePage in Texas. LePage conducted business in Texas. This factor weighs in favor of the transfer.

E. Availability of Process to Compel the Appearance of Unwilling Witnesses

*7 The fifth factor to consider is the availability of process to compel the appearance of unwilling witnesses. Creative did not claim that any of its witnesses would be unwilling to travel to Connecticut. Therefore, the court does not consider this factor.

F. Interest of Justice

The final factor the court must examine is whether there are other considerations affecting the interest of justice. Under this factor the court recognizes "the '[s]trong policy favoring the litigation of related claims in the same tribunal' so that 1) pretrial discovery can be conducted more efficiently, 2) duplicitous litigation can be avoided, thus saving time and expense for the parties and witnesses and better serving the public interest, and 3) inconsistent results can be avoided." *Conners v. Lexington Insurance Co.,* 666 F.Sup. 434, 464 (E.D.N.Y.1987) (citing Wyndham, 398 F.2d at 619). Since the Court will hear the action against LePage it is in interest of justice and to avoid a waste of judicial resources that the action against Creative stay in Connecticut as well

The motion to transfer as to Creative is denied

*CONCLUSION*

For the foregoing reasons, the court denies the defendants' motions to dismiss and motions to transfer. (Documents nos. 5 and 8.)

It is so ordered, this 30th day of March, 2000 at Hartford, Connecticut

2000 WL 565483 (D.Conn.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works

**EXHIBIT J**

## IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF ALABAMA
## EASTERN DIVISION

Qantum Communications   )
Corporation, *et al.*     )
          )
    Plaintiffs,   )
          )
vs.         ) Case No **3:04-cv190-C**
          )
          )
Tiger Communications, Inc.,  )
          )
    Defendant.  )

## DEFENDANT'S PRE-DISCOVERY DISCLOSURES

Pursuant to Rule 26 (a)(1), FRCP, Defendant Tiger Communications, Inc., through its undersigned counsel of record, hereby submits the following disclosures:

A. Provide the other party the name and, if known, the address and telephone number of each individual believed by it to have discoverable, non-privileged personal knowledge concerning any significant factual issue in the case, appropriately indicting the subject which the person has such knowledge.

Response:

Defendant discloses the identities and addresses of the following individuals believed to have discoverable information regarding Plaintiffs' claim:

1. Thomas M. Hayley
  1695 East University Drive

1

Auburn, AL 36830
Tel. 334-887-9999
Subject of information: Mr. Hayley is the President of the Defendant and has knowledge concerning the claims and allegations set forth in the Complaint.

2. John Kennedy
   1402 Covington Avenue
   Opelika, AL 36801
   Tel. 334-887-9999
   Subject of information: John Kennedy is an employee of Defendant and has knowledge concerning the claims and allegations set forth in the Complaint.

3. Meghan Chenoweth
   425 Opelika Road, Apartment 121
   Auburn, AL 36830
   Tel. 334-887-9999
   Subject of information: Ms. Chenoweth is referenced in the Complaint and has knowledge concerning the claims and allegations set forth in the Complaint.

4. Stacy Linn
   1123 5th Avenue
   Opelika, AL 36801
   Tel. 334-887-9999
   Subject of information: Ms. Linn is referenced in the Complaint and has knowledge concerning the claims and allegations set forth in the Complaint.

4. Amelia Tuck Turner
   922 Annalue Drive
   Auburn, AL 36830
   Tel. 334-887-9999
   Subject of information: Subject of information: Ms. Turner is referenced in the Complaint and has knowledge concerning the claims and allegations set forth in the Complaint.

5. Scott Bebout
   Auburn, AL
   Subject of information: Mr. Bebout was the Market Manager of Qantum during the time that allegations set forth in the Complaint occurred along with any action taken by Qantum to hire Tiger employees. Mr Bebout retired from his position Janury 1, 2005 and we are currently seeking his current contact information.

2

6. Jim Powell
   Tel. 745-4656
   Saugahatchee Lake Road
   Opelika, AL 36801
   Subject of information: Mr. Powell is the Market Manager of Qantum an has knowledge concerning the claims and allegations set forth in the Complaint along with any action taken by Qantum to hire Tiger employees.

7. Frank Osbourne
   3. Stamford Landing, Suite 210
   46 Southfield Avenue
   Stamford, CT 06902
   Subject of information: Mr. Osbourne is the CEO of Qantum and has knowledge concerning the claims and allegations set forth in the Complaint

Defendant reserves the right to supplement the list or otherwise notify Plaintiffs of additional individuals having knowledge of discoverable information.

B. Make available to other parties for inspection and copying, as under Fed. R. Civ. P. 34, all documents, data compilation, and tangible things in its possession, custody, or control that may be used by it to support its contentions the respect to any significant factual issue in the case.

Response:

Defendant avers that the documents in Defendant's control that may be relevant to the disputed facts include the following:

A. Non-compete agreement between Root Communications Group, L.P. and Meghan Jeffcoat f/k/a Meghan Chenoweth.
B. Non-compete agreement between Qantum of Auburn, L L C. and Stacey Linn
C. Non-compete Agreement between Root Communications Group, L.P. and Amelia Turner.

3

D.    List of advertisers called on by Meghan Jeffcoat, Stacey Linn and Amelia Turner on behalf of Qantum in 2003.

E.    List of dollar advertising amounts sold to the Qantum accounts maintained by Meghan Jeffcoat, Stacey Linn and Amelia Turner in 2003.

F.    Documents showing Qantum's gross and net sales revenues attributable to Meghan Jeffcoat, Stacey Linn and Amelia Turner during twelve months prior to their resignation.

G.    Documents showing Qantum's gross and net sales commission paid to Meghan Jeffcoat, Stacey Linn and Amelia Turner during twelve months prior to their resignation.

H.    Documents reflecting dollar amount of advertising sold by Qantum to accounts Meghan Jeffcoat, Stacey Linn and Amelia Turner were responsible for after their resignation.

I.    Documents showing billing projections for advertising sold by Meghan Jeffcoat, Stacey Linn and Amelia Turner for Tiger Communications for the year 2004.

J    Call sheets of Meghan Jeffcoat, Stacey Linn and Amelia Turner while working at Tiger from June through December of 2004.

K.    Deposition of Scott Bebout dated June 22, 2004.

L.    Deposition of Stacey Linn dated June 22, 2004.

M.    Deposition of Stacey Linn dated June 22, 2004.

N.    Deposition of Amelia Tuck Turner dated June 22, 2004.

O.    Affidavit of Stacey Linn dated May 14, 2004.

P.    Affidavit of Meghan Chenoweth dated May 14, 2004.

Q.    Affidavit of Amelia Tuck Turner dated May 14, 2004.

Defendant will make these documents available for inspection and copying upon request.

Defendant reserves the right to supplement this list or otherwise notify Plaintiffs of additional documents.

C.    Provide to other parties a computation of any category of damages claimed by it, making available for inspection and copying, as under Fed. R. Civ. P. 34, the documents or other evidentiary materials, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of injuries

4

suffered.

Response:

The Defendant is seeking no damages at this time.

D.   Provide to other parties for inspection and copying, as under Fed. R. Civ. P. 34, any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part of all of a judgment which may be entered in the action or to indemnify or reimburse for payment made to satisfy the judgment.

Response:

Defendant avers there is no insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment.

Respectfully submitted this _____ day of _____, 2005.

                                        _____
                                        Rebecca W. P. Buxton (BUX001)
                                        Attorney for Plaintiff
                                        AKRIDGE & BALCH, P.C.
                                        730 N. Dean Road, Suite 300
                                        P.O. Drawer 3738
                                        Auburn, AL 36831-3738
                                        (334) 887-0884

5

# EXHIBIT K

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

QANTUM COMMUNICATIONS,                )
CORPORATION, *et al.*,                )
                                      )
        Plaintiffs,                   )
                                      )
v.                                    )     CIVIL ACTION NO. 3:04cv190-C
                                      )
TIGER COMMUNICATIONS, INC.,           )
                                      )
        Defendant.                    )

## UNIFORM SCHEDULING ORDER

**Please read this order carefully. These deadlines and responsibilities may not be
changed without leave of the court. All parties are expected to comply with each and
every provision of this order in a timely manner, and extensions will be granted in only
extraordinary unforeseeable circumstances. The parties are also expected to comply
with the Middle District's Local Rules and the Middle District's Guidelines to Civil
Discovery Practice, both of which can be found at http://www.almd.uscourts.gov/.**

Under Fed. R. Civ. P. 16, as amended, the Court is required to set a schedule for the
discovery and the filing of motions. Accordingly, it is

ORDERED as follows:

**SECTION 1.** As provided in Fed. R. Civ. P. 16(d), a final pretrial conference in this
case is set for September 22, 2005, in Montgomery, Alabama, at 10:00 a.m. in Courtroom
4B, United States Courthouse, One Church Street, Montgomery, Alabama. This conference
shall be attended by at least one of the attorneys who will try the case for each of the parties
and by any party who is not represented by an attorney. The court will address the matters
provided for in Rule 16(c). All motions which have not been submitted or ruled on will be
heard at this time. The parties are DIRECTED to jointly prepare a proposed pretrial order
consistent with the outline attached to this order. The plaintiff shall insure that the original
of the proposed pretrial order is received by the court NOT LATER THAN FIVE
BUSINESS days prior to the pretrial conference by either delivery of the order to chambers
or by transmitting an electronic copy of the proposed pretrial order to the court as an
attachment to an email message sent to propord_coody@almd.uscourts.gov. For this
purpose, the electronic copy should be in WordPerfect or Word format and not in Adobe

Acrobat PDF format.

Jury selection is set for October 24, 2005, commencing at 10:00 a.m., in Opelika, Alabama before United States Magistrate Judge Vanzetta Penn McPherson. The trial of this case is set for October 24, 2005. This initial trial setting is tentative only. At the Pretrial Conference the Court will provide the parties a definite trial date during the term commencing on the date of jury selection. This case will be tried in Opelika, Alabama.

**SECTION 2.** Any dispositive motions, i.e., motions to dismiss or motions for summary judgment, shall be filed no later than **August 10, 2005**. A brief and all supporting evidence shall be filed with any such motion. In all briefs filed by any party relating to the motion, the discussion of the evidence in the brief must be accompanied by a specific reference, by page and line, to where the evidence can be found in a supporting deposition or document. Failure to make such specific reference will result in the evidence not being considered by the court.

**SECTION 3.** On or before **SEVEN (7) DAYS** after the deadline for the filing of dispositive motions, counsel for all parties shall conduct a face-to-face settlement conference at which counsel shall engage in good faith settlement negotiations. If settlement cannot be reached, counsel shall also discuss whether mediation will assist the parties in reaching settlement. Not more than **THREE (3) DAYS** after this conference, counsel for the plaintiff shall file a pleading titled "Notice Concerning Settlement Conference and Mediation". This pleading shall indicate whether settlement was reached and, if not, whether the parties believe mediation will assist them in resolving this case short of trial. Information about mediation is attached to this order.

**SECTION 4.** The plaintiff shall file any motions to amend the pleadings and to add parties on or before May 16, 2005. The defendant shall file any motions to amend the pleadings and to add parties on or before May 23, 2005.

**SECTION 5.** Any motion for class certification shall be filed on or before May 16, 2005. A brief discussing the factors and requirements enumerated in FED. R. CIV. P. 23(a), (b) and (g) shall be filed with any such motion.

**SECTION 6.** The failure to file a response to any motion -- either dispositive or non-dispositive -- within the time allowed by the court shall indicate that there is no opposition to the motion.

**SECTION 7.** All discovery shall be completed on or before September 8, 2005, except that, as to any witnesses whose names are not revealed until the last day allowed under SECTION 9 or whose names are not revealed with sufficient time for the other parties

2

to take a deposition prior to the pretrial conference, the opposing party shall have the time extended in this paragraph to allow for deposing such witnesses. Discovery shall be conducted according to the limitations agreed upon by the parties as set forth in the discovery plan filed as part of the parties' planning meeting report.

**SECTION 8.** The parties shall disclose to each other the identity of ANY person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence, and provide the reports of retained experts or witnesses whose duties as an employee of the party regularly involved giving expert testimony, required by Rule 26(a)(2) of the Federal Rules of Civil Procedure, as follows:

From the plaintiff(s) -- on or before August 1, 2005.

From the defendant(s) -- on or before August 22, 2005.

The parties shall comply fully with all requirements of Rule 26(a)(2) in regard to disclosure of expert testimony.

**SECTION 9.** On or before September 23, 2005, each party shall, pursuant to the provisions of Rule 26(a)(3) of the Federal Rules of Civil Procedure, exchange the names, addresses and telephone numbers of all witnesses, separately identifying those whom the party expects to present and those whom the party may call if the need arises. The witness list should include the names of any witnesses required to be disclosed under Paragraph 8. Unless specifically agreed between the parties or allowed by the Court for good cause shown, the parties shall be precluded from calling any witness not so identified.

**SECTION 10.** On or before September 23, 2005, the parties shall, pursuant to the provisions of Rule 26(a)(3) of the Federal Rules of Civil Procedure, identify any part of a deposition or other document that a party expects to use at trial. Adverse parties shall within **ONE WEEK THEREAFTER** identify any responsive parts of depositions expected to be used, and a party shall within **THREE DAYS** of the designation of such responsive parts designate any part which is desired as a rebuttal thereto. Unless specifically agreed between the parties or allowed by the Court for good cause shown, the parties shall be precluded from using any part of a deposition or other document not so listed, with the exception of parts of depositions or documents to be used solely for the purpose of impeachment. Except to the extent written notice to the contrary is given prior to the scheduled trial date, each party shall be deemed to have agreed that one of the conditions for admissibility under Rule 32 of the Federal Rules of Civil Procedure is satisfied with respect to any such deposition and that there is no objection to the testimony so designated.

**SECTION 11.** On or before September 23, 2005, the parties shall, pursuant to the

3

provisions of Rule 26(a)(3) of the Federal Rules of Civil Procedure, furnish opposing counsel for copying and inspection all exhibits or tangible evidence to be used at the trial, and proffering counsel shall have such evidence marked for identification prior to trial. Unless specifically agreed between the parties or allowed by the Court for good cause shown, the parties shall be precluded from offering such evidence not so furnished and identified, with the exception of evidence to be used solely for the purpose of impeachment. <u>Except to the extent written notice to the contrary is given no later than **SEVEN (7) DAYS PRIOR TO THE SCHEDULED TRIAL DATE**, the evidence shall be deemed genuine and admissible in evidence. The written notice shall set forth the grounds and legal authorities. All trial exhibits must be premarked prior to trial.</u>

**SECTION 12.** Except to the extent of any conflict with the deadlines specified in this order, the Discovery Plan contained in the FED.R.CIV.P. 26(f) Report of Parties' Planning Meeting previously filed with the court is adopted and incorporated herein.

**SECTION 13.** *If a jury trial:* The parties shall file any requested voir dire questions, motions in limine fully briefed, and any proposed jury instructions, together with citations of law thereon, **ON OR BEFORE TWO WEEKS PRIOR TO THE TRIAL DATE UNLESS SAID TIME IS SHORTENED BY THE COURT ON MOTION OF EITHER PARTY.** Trial counsel are **DIRECTED** to review the jury questionnaire used in this court and to avoid any duplication of matters addressed therein in their voir dire questions. The jury questionnaire is available on the court's website at http://www.almd.uscourts.gov/juryinfo.htm.

**SECTION 14.** In cases involving jury trials, the term **TRIAL DATE** as used in the foregoing deadlines shall mean the date set for jury selection.

**SECTION 15.** If any party has an objection to these deadlines, the party should inform the Court within **14** days from the date of this Order; otherwise, the Court will assume that the deadlines are agreeable to all parties. Unless this Order be modified by subsequent Order of the Court, the provisions hereinabove set out are binding on the parties.

Done this 3rd day of May, 2005

                    /s/Charles S. Coody
                    CHARLES S. COODY
                    CHIEF UNITED STATES MAGISTRATE JUDGE

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
_____ DIVISION

```
                              )
                              )
         Plaintiff,           )
                              )
    v.                        )        CIVIL ACTION NO. ___ · __ - ___ - __
                              )
_____             )
                              )
         Defendants.          )
```

## ORDER ON PRETRIAL HEARING

A pretrial hearing was held in this case on _____, _____, during which the following proceedings were held and actions taken:

1. PARTIES AND TRIAL COUNSEL:

PARTIES                              TRIAL COUNSEL

Plaintiff(s):

Defendant(s)

COUNSEL APPEARING AT PRETRIAL HEARING:

For Plaintiff(s):

For Defendant(s)

2. JURISDICTION AND VENUE:

3. PLEADINGS. The following pleadings have been allowed:

4. CLAIMS AND DEFENSES OF THE PARTIES:

(a) Plaintiff(s)' Claims: [**In this section the plaintiff(s) should (1) state each claim listing the claim separately; (2) state the statutory or other legal basis for the claim (If the claim is based on case law give case citations and state the elements of the claim.); and (3) briefly state the facts supporting each claim.**]

(b) Defendant(s)' Defenses: [**In this section the defendant(s) should state as to each claim identified by the plaintiff the affirmative or factual defenses to the claim and a brief statement of the facts supporting the defense.**]

5

5. STIPULATIONS OF FACT BY AND BETWEEN THE PARTIES:

6. This case is set for trial on _____, commencing at _____ in _____, Alabama.

7. The plaintiff(s) shall file a trial brief with the court **on or before** _____. The defendant(s) shall file a trial brief with the court **on or before** _____.

8. **If a jury trial:** The parties are ORDERED to file any requested voir dire questions and any proposed jury instruction, together with citations of law thereon, **ON OR BEFORE TWO WEEKS PRIOR TO THE DATE OF JURY SELECTION UNLESS THE TIME IS SHORTENED BY THE COURT ON MOTION OF EITHER PARTY.** Trial counsel are DIRECTED to review the jury questionnaire used in this court and to avoid any duplication of matters addressed therein in their voir dire questions. A copy of the questionnaire may be found on the court's website at http://www.almd.uscourts.gov/juryinfo.htm.

9. Any motions in limine or similar motions must be filed **not later than two weeks** prior to the trial date and must be accompanied by a brief. Responses to these motions shall be filed **not later than one week** prior to the trial date.

10. All exhibits shall be marked prior to trial with labels which are available from the clerk's office. In addition to the original exhibits marked for introduction, each party shall have available copies of each photostatically reproducible exhibit as follows: (1) one copy for each opposing party and (2) one copy for the court which shall be contained in a notebook with each exhibit tabbed in the order which counsel expects to introduce the exhibit. On the first day of trial, counsel shall provide an exhibit list to the court (2 copies) and to each party. The exhibit list shall conform to the format provided to the parties during the pretrial conference.

11. It is ORDERED that all of the allowances and agreements contained in this order be, and the same are hereby, binding upon all parties in this case unless this order is hereafter modified by the court.

Done this _____ day of _____, _____.

CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE

## IN THE DISTRICT COURT OF THE UNITED STATES
## MIDDLE DISTRICT OF ALABAMA

### **PROGRAM OF VOLUNTARY MEDIATION**

This court has established a program of voluntary mediation to assist litigants in resolving their disputes prior to trial. The court stresses that mediation is completely voluntary and confidential. The court strictly enforces the confidentiality of mediation.

The court encourages litigants to consider the salutary benefits of resolving at an early stage their dispute through voluntary mediation. Mediation is a process of confidential negotiation through which parties may often achieve results which could not be gained through submission of their case to a jury. Successful mediation saves the substantial time and expense involved with a trial. Successful mediation allows parties to alleviate the risk of trial and, at the same time, permits the parties to play an active role in the final decision about their case. The mediation process generally involves a joint meeting with all parties and counsel to discuss the case and each side's position. After this meeting the mediator will meet with each side individually for a full discussion of that side's case. Throughout the process the goal of the mediator is to assist the parties in negotiating a settlement. Often the mediator will provide to the parties a frank, honest opinion about the strengths and weaknesses of their case. Often an objective viewpoint assists parties in making good decisions about settlement.

The scheduling order entered in this case requires that not less than 21 days after the date for filing dispositive motions, counsel for the parties shall personally meet and attempt to reach settlement of the case. If counsel in good faith cannot reach settlement, counsel are also required to consider whether mediation will assist the parties in resolving this case. Within five days after this conference counsel are to notify the trial judge in writing whether they have settled the case and, if not, whether they believe mediation will assist the parties in resolving the case. Upon such notification, the trial judge may assign a mediator to schedule a mediation conference. However, a judge of this court may assign a mediator at any time.

Except in extraordinary circumstances the mediator will be a judicial officer. Under the existing internal operating understandings of this court, a nonjudicial mediator will not be assigned to a case without the knowledge and concurrence of the parties.

The court also encourages parties to consider settlement negotiations and mediation well before the time when a settlement conference is required. At any time while a case is pending, the parties may seek assistance in settling their dispute through mediation.

7

# EXHIBIT L



Not Reported in F.Supp.2d
2004 WL 288808 (D.Conn.)
(Cite as: 2004 WL 288808 (D.Conn.))

Page 1

**C**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Connecticut.
Ira NAGEL, Plaintiff,
v.
THE RESIDENTIAL RESORT, LLC, Frank R.
Wood, Linda Bonfiglio, and Stanley Cohen,
Defendants.
**No. 3:03CV2246 (PCD).**

Feb. 6, 2004

Scott Michael Schwartz, Farmington, CT, Glenn
Greenwald, Joel Christoph, Greenwald, Christoph,
PC, New York City, NY, for Plaintiff.

Eric C. Hard, Cohen, Auger, Burns & Hard,
Hartford, CT, Eric P. Smith, Steven J. Errante,
Lynch, Traub, Keefe & Errante, New Haven, CT,
David L. Woodard, Michael Joseph Walsh,
Moukawsher & Walsh, Hartford, CT, for Defendants.

*RULING ON DEFENDANTS' MOTION TO DISMISS
AND ORDER*

DORSEY, Senior J.

*\*1 Defendants move to dismiss based on a forum
selection clause ("FSC"). For the reasons stated
herein, Defendants' motion is denied.*

I. Background [FN1]

> FN1. Only the facts relevant to this motion
> are recited.

This breach of contract action arises from a dispute
regarding the ownership and management of a 120-
unit apartment building located at 8 Turtle Creek
Lane, East Hartford, Connecticut (the "Property").
Plaintiff alleges that, pursuant to a written agreement
(the "Agreement") with Defendant Residential
Resorts, LLC, he has an ownership interest and
management responsibilities in the Property. Plaintiff
seeks a declaratory judgment against Defendants
Wood, Bonfiglio, and Residential Resorts (Count

One), and he alleges breach of contract against
Defendants Wood, Bonfiglio, and Residential Resorts
(Count Two), aiding and abetting breach of contract
against Defendant Cohen (Count Three), and tortious
interference with contractual relations against
Defendant Cohen (Count Four).

Plaintiff alleges that the Agreement was executed on
July 31, 2003, and amended on September 5, 2003.
At issue in Defendants' motion to dismiss is a FSC in
the Agreement. Section 5.7 of the Agreement
provides that

> Governing Law. This agreement shall be governed
> and construed in accordance with the laws of the
> State of Connecticut, regardless of the laws that
> might be applicable under principles of conflict of
> law. Each Party consents to the jurisdiction of the
> courts of the State of Connecticut to determine any
> action or claim for damages, injunctive relief or
> other relief arising under this agreement.

Defendants move to dismiss, arguing that the FSC
vests mandatory and exclusive jurisdiction in the
Connecticut state courts.

II. Standard

Motions to dismiss pursuant to FSCs are properly
characterized as based on Fed. R. Civ. P. 12(b)(6).
*Evolution Online Sys., Inc. v. Koninklijke PTT
Nederland N.V.,* 145 F.3d 505, 508 n. 6 (2d Cir.1998)
(citing *Lambert v. Kysar,* 983 F.2d 1110, 1112 n. 1
(1st Cir.1993)) (Rule 12(b)(6) is the proper
"procedural vehicle for urging dismissal under [a]
forum selection clause").

A motion to dismiss pursuant to Fed. R. Civ. P.
12(b)(6) is properly granted when "it is clear that no
relief could be granted under any set of facts that
could be proved consistent with the allegations." *In re
Scholastic Corp. Sec. Litig.,* 252 F.3d 63, 69 (2d
Cir.2001) (internal quotation marks omitted). A
motion to dismiss must be decided on the facts as
alleged in the complaint. *Merritt v. Shuttle, Inc.,* 245
F.3d 182, 186 (2d Cir.2001). All allegations are
assumed to be true and are considered in a light most
favorable to the non-movant. *Manning v. Util. Mut.
Ins. Co.,* 254 F.3d 387, 390 n. 1 (2d Cir.2001). "The
issue on a motion to dismiss is not whether the
plaintiff will prevail, but whether the plaintiff is
entitled to offer evidence to support his or her
claims." *United States v. Yale-New Haven Hosp.,* 727

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2004 WL 288808 (D.Conn.)
(Cite as: 2004 WL 288808 (D.Conn.))

F.Supp. 784, 786 (D.Conn.1990). In its review of a 12(b)(6) motion to dismiss, a court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." *Samuels v. Air Transport Local 504, 992 F.2d 12, 15 (2d Cir.1993)*.

### III. Discussion

**\*2** Defendants argue that the Agreement's FSC is mandatory and places exclusive jurisdiction in the Connecticut state courts. Def. Mem. at 5. Plaintiff responds that the FSC is permissive and does not preclude jurisdiction in other courts. Pl. Opp. at 1.

#### A. Mandatory and Permissive Forum Selection Clauses

FSCs generally are classified as mandatory or permissive. A mandatory FSC grants exclusive jurisdiction to a selected forum. A permissive FSC, sometimes referred to as a consent-to-jurisdiction clause, only reflects the contracting parties' consent to resolve disputes in a certain forum, but does not require that disputes be resolved in that forum. *See John Boutari and Son, Wines and Spirits, S.A., v. Attiki Imps. and Distribs. Inc., 22 F.3d 51, 52-53 (2d Cir.1994)*.

#### B. Analysis

As noted above, the FSC here provides that "each Party consents to the jurisdiction of the courts of the State of Connecticut to determine any action or claim for damages, injunctive relief or other relief arising under this agreement." Agreement, § 5.7. Defendants argue (1) that the FSC is unambiguous, mandatory, and exclusive, Def. Mem. at 6, and (2) that if the FSC is ambiguous such ambiguity should be construed against Plaintiff, who drafted it, Def. Reply at 3-7. Plaintiff contends that the FSC is a permissive consent-to-jurisdiction clause.

The FSC is not ambiguous as there is no language providing that Connecticut state courts shall have exclusive jurisdiction. *See Dunne v. Libbra, 330 F.3d 1062, 1064 (8th Cir.2003)* ("With no plain language basis to support a finding of exclusivity, we do not view the forum selection clause as ambiguous"). The majority of courts considering the issue have held that absent clear language of exclusive jurisdiction, an FSC is permissive. *See e.g. Boutari, 22 F.3d at 52* ("The general rule in cases containing forum selection clauses is that when only jurisdiction is

specified the clause will generally not be enforced without some further language indicating the parties' intent to make jurisdiction exclusive") (internal quotation omitted); *Blanco v. Banco Indus. De Venezuela, S.A., 997 F.2d 974, 979 (2d Cir.1993)* (finding FSC to be "a permissive consent-to-jurisdiction provision, and not a mandatory and exclusive forum selection clause ... because of the nonmandatory words the parties chose to express their agreement"); *John's Insulation, Inc. v. Siska Constr. Co., 671 F.Supp. 289, 295 (S.D.N.Y.1987)* ("A consent to jurisdiction clause is a typical example of a permissive forum selection clause," which "merely empowers a court to hear a particular case, but it does not require that the case be heard in the particular forum") (internal citations omitted); *K & V Scientific Co., Inc. v. Bayerische Motoren Werke Aktiengesellschaft, 314 F.3d 494, 500 (10th Cir.2002)* (finding an FSC to be permissive in the absence of exclusive terms such as "exclusive," "sole," or "only"); *E'Cal Corp v. Office Max, Inc., 2001 U.S. Dist. LEXIS 15868, at \*6-\*10 (E.D.Pa. Sept. 6, 2001)* (finding language identical to the language of § 5.7 of the Agreement to be permissive).

**\*3** The cases Defendants cite to support their argument that the FSC is mandatory are not convincing. For example, they argue that *Cronin v. Family Education Co., 105 F.Supp.2d 136 (E.D.N.Y.2000)* supports their position, but the FSC in *Cronin* clearly provided that "[i]n the event of any dispute under this Agreement, the parties agree to the *exclusive* jurisdiction of the courts located in the City and State of New York." *Cronin, 105 F.Supp. at 137* (emphasis added). In contrast, the FSC at issue here contains no such language of exclusivity. Defendants' claim that *Cent. National-Gottesman, Inc. v. M.V. Gertrude Oldendorff, 204 F.Supp.2d 675 (S.D.N.Y.2002)* supports their argument is also misplaced. In *Cent. National Gottesman,* the clause provided that "[a]ny disputes under the Bill of Lading to be decided in London according to English Law." *Cent. National Gottesman, 204 F.Supp.2d at 678*. Finding the clause to be mandatory, the court noted that "rather than simply stating that the court in London shall have jurisdiction over all disputes, [the language] actually makes explicit that such disputes are to be resolved in that forum and nowhere else." *Id.* In contrast, here the FSC merely reflects that the parties agree that Connecticut state courts are an appropriate forum, but not the exclusive forum, to bring any dispute arising under the Agreement. Unlike in *Cent. National Gottesman,* here the FSC does not say that any disputes are to be decided in a specified court. Instead, the plain language provides

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2004 WL 288808 (D.Conn.)
(Cite as: 2004 WL 288808 (D.Conn.))

Page 3

that the parties agree that Connecticut state courts are an appropriate forum in which a dispute may, but not must, be bought. [FN2]

> FN2. Defendants' argument that "[i]n *TUC Electronics, Inc. v. Eagle Telephonics, Inc.*, 698 F.Supp. 35 (D.Conn.1998), [this Court] considered nearly identical language in enforcing a forum selection clause and in dismissing the federal action" is devoid of any merit *See* Def. Mem. at 6. The FSC in *TUC Electronics* provided that Any dispute, controversy or claim arising out of, in connection with or in relation to this Purchase Order, its interpretation, construction, formation, performance or breach (except defective pricing referred to below) *shall* be submitted to and determined by the appropriate court of original jurisdiction of the State of New York *TUC Electronics, 698 F.Supp. at 37* (emphasis added). The clause was found to "mandate[ ] that disputes be submitted to 'a court of original jurisdiction of the State of New York' " *Id.* at 39. The issue was whether the phrase "of the State of New York" referred to federal courts and state courts, or solely to state courts. *Id.* The consent-to-jurisdiction clause in the present case is far from "nearly identical" to the FSC in *TUC Electronics*

Here, while the parties agree that Connecticut law "shall" govern any disputes and consent to jurisdiction of Connecticut state courts, there is no clear language indicating that sole and exclusive jurisdiction lies *only* in Connecticut state courts. The parties clearly agree that Connecticut state courts are one appropriate forum, but the plain language does not foreclose litigation in other courts. Such consent to state court does not preclude the action from being litigated in another court.

The FSC is a permissive consent-to-jurisdiction provision rather than a mandatory exclusive FSC. Because the FSC does not require litigation of this dispute in Connecticut state courts, Defendants' motion to dismiss pursuant to the FSC is denied

IV. Conclusion

For the reasons stated herein, Defendants' motion to dismiss [Doc. No. 29] is denied

It is hereby ORDERED that Defendants' opposition

to Plaintiff's motion for preliminary injunction shall be filed on or before February 10, 2004. Plaintiff's response, should he wish to file one, shall be filed on or before February 12, 2004. [FN3] All such filings shall be compliant with the Supplemental Order [Doc. No 3] A hearing on the preliminary injunction shall be held at 10:30 on February 13, 2004

> FN3. Both parties shall submit a courtesy copy of their memoranda to Chambers on or before the due dates.

SO ORDERED.

2004 WL 288808 (D.Conn.)

**Motions, Pleadings and Filings** (Back to top)

•       3:03cv02246        (Docket) (Dec. 24, 2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U S Govt Works