UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| QANTUM COMMUNICATIONS CORPORATION; QANTUM OF AUBURN, LLC, QANTUM ACQUISITION COMPANY, LLC, | CIVIL ACTION NO.<br><br>3:04CV0315 (CFD) |
| Plaintiffs, | |
| v. | |
| JOHN F. KENNEDY, | |
| Defendant. | AUGUST 17, 2005 |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT'S MOTION TO TRANSFER**

Plaintiffs in the above referenced matter, Qantum Communications Corporation ("QCC"), Qantum of Auburn, LLC ("Qantum Auburn"), and Qantum Acquisition Company, LLC ("QAC"), respectfully submit this memorandum of law in opposition to the Motion to Transfer dated July 20, 2005 filed by the Defendant, John F. Kennedy ("Kennedy").

I.  **INTRODUCTION**

   A.  **Factual Background**

The Defendant, Kennedy, is a former employee of the Plaintiffs' Assignor, Root Communications Group, L.P. ("Root"). Kennedy was subject to and bound by an employment agreement with Root dated January 22, 2003 ("Employment Agreement"). The Employment

Agreement contained, among other provisions, a Non-Compete Covenant and a Non-Solicitation Covenant. (Complaint, para. 36-38). Effective July 2, 2003, Plaintiffs purchased 100% of the limited partnership interests of Root and received an assignment of Root's rights under the Employment Agreement. (Complaint, para. 39). Shortly after the acquisition, and following an investigation of unauthorized and inappropriate conduct by Kennedy, Kennedy resigned his employment with Plaintiffs. (Complaint, para. 40). As part of the termination of Kennedy's employment, he executed a Settlement Agreement and Release of All Claims with Quantum Auburn dated on or about August 4, 2003 (the "Settlement Agreement.") in which he acknowledged his wrongdoing. (Complaint, para. 41-42). In the Settlement Agreement, Plaintiffs agreed to waive the Non-Compete Covenant but maintained all other provisions of the Employment Agreement, including the Non-Solicitation Covenant. (Complaint, para. 43). Kennedy was aware of the continued enforceability of the Non-Solicitation Covenant. (Complaint, para. 54).

Plaintiff QCC owns Qantum Holdings, LLC (the successor by merger to QAC), which in turn owns plaintiff Quantum Auburn. (Affidavit of Michael Mangan, para. 4). The primary officers and senior management personnel of the Plaintiffs are based at QCC's corporate offices at 46 Southfield Road, Stamford, Connecticut. (Affidavit of Michael Mangan, para. 5). Because the Plaintiffs' primary offices are in Stamford, Connecticut, the Settlement Agreement

contained a forum selection clause requiring any action for its breach to be commenced in Fairfield County, Connecticut. The Settlement Agreement clearly states that "[a]ny action for breach of the terms of this Agreement *shall* be commenced in a court of competent jurisdiction within Fairfield County Connecticut *where jurisdiction shall be unchallenged by either party*." (Emphasis added). (Affidavit of Michael Mangan, para. 6).

After executing the Settlement Agreement, Kennedy accepted a similar position with Tiger Communications ("Tiger"). (Complaint, para. 45). During the relevant time period, Plaintiffs had also employed Meghan Chenoweth ("Chenoweth") and Stacey Linn ("Linn"), both of whom subsequently left their employment with Plaintiffs to accept similar positions with Tiger. (Complaint, para. 14, 16, 24, 28, 46). Upon information and belief, Kennedy and Tiger actively solicited Chenoweth and Linn to leave their positions with Plaintiffs and accept employment with Tiger. (Complaint, para. 47). Kennedy was aware of the contractual relationships between Chenoweth and Linn and Plaintiffs, yet he solicited Chenoweth and Linn to leave their positions with Plaintiff and accept positions with Tiger. (Complaint, para. 51-52). In light of his actions, Kennedy breached the Settlement Agreement and consequently the Employment Agreement. Moreover, Kennedy fraudulently induced Plaintiffs to enter into the Settlement Agreement by concealing his intent to violate the Non-Solicitation Covenant in the Employment Agreement. (Complaint, Count Two, para. 55).

3

Plaintiffs suffered substantial money damages to their business as a result of Kennedy's conduct. Plaintiffs commenced this action against Kennedy to recover its damages.

**B.   Pending Alabama Actions**

In an effort to convince this Court to transfer this action to the Middle District of Alabama Eastern Division, Kennedy has referred the Court to other litigation that Plaintiffs commenced against other parties in Alabama. While Defendant is correct that Plaintiffs did commence three separate actions against Chenoweth, Linn and another former employee, Amelia Tuck Turner ("Turner") in the Middle District of Alabama Eastern Division, those three actions involved breaches of those individuals' employment contracts only. Unlike the Settlement Agreement at issue in this action, the employment contracts in those three actions did not contain forum selection clauses mandating that venue be in Connecticut. Moreover, the Chenoweth, Linn and Tucker actions were dismissed for lack of federal subject matter jurisdiction after contested evidentiary hearings. Plaintiffs, and additional parties related to Plaintiffs, have commenced a new action against Turner, Chenoweth and Linn in the Circuit Court of Lee County, Alabama, Civil Action No. CV05-185 (the "Alabama State Court Action"). Unlike this action which asserts multiple causes of action against Kennedy, the Alabama State Court Action involves only claims of breaches of employment contracts against Turner, Chenoweth and Linn. Moreover, because the Alabama State Court Action is now pending in a state court, there could

4

be no consolidation with that action if this action were transferred to the Middle District of Alabama Eastern Division.

Plaintiffs do have an action pending against Tiger in the Middle District of Alabama Eastern Division entitled <u>Qantum Communications Corporation, et al. v. Tiger Communications, Inc.</u>, Civil Action No. 04-W-190-E (the "Tiger Action"). (A copy of the Complaint in the Tiger Action is attached hereto as Exhibit A). The Tiger Action seeks money damages and injunctive relief against Tiger for tortious interference with contractual and business relations. Unlike this action, it does not assert any causes of action for breach of the Settlement Agreement or breach of an employment agreement, nor does it involve a written agreement with a forum selection clause.

Although the Alabama State Court Action and the Tiger Action may have some common witnesses with this action, the legal theories behind the causes of action are entirely different. In the Alabama State Court Action, the issues center on breaches of the employment agreements of Linn, Chenoweth and Turner. The Tiger Action involves a claim of tortious interference with business relations. This action, however, involves claims under a Settlement Agreement and Kennedy's Employment Agreement, to which only Kennedy and Plaintiffs are parties.

5

C. <u>Procedural History Of This Action</u>

Plaintiffs originally commenced this action against Kennedy by summons and complaint dated January 21, 2004 and returnable to the Connecticut Superior Court for the Judicial District of Stamford/Norwalk at Stamford on February 17, 2004. The Complaint sets forth five causes of action against Kennedy: 1) Kennedy tortiously interfered with plaintiffs' contractual relationships with Chenoweth and Linn; 2) Kennedy fraudulently induced plaintiffs to enter into the Settlement Agreement; 3) Kennedy breached the Settlement Agreement; 4) Kennedy breached the Employment Agreement; and 5) a count seeking a declaratory judgment and injunctive relief related to Kennedy's breach of the Settlement Agreement. Claiming diversity jurisdiction, Defendant Kennedy removed this action to this Court by Notice of Removal dated February 24, 2004 pursuant to 28 U.S.C. Section 1441.

Since removing this action, Defendant has avoided filing an answer to the Complaint. Rather, Defendant has filed multiple pleadings which have delayed the prosecution of this action and the Plaintiffs' pursuit of necessary discovery. First, Defendant filed a Motion dated February 27, 2004 seeking a thirty-day extension of time from March 2 to April 1, 2004, to Answer or Otherwise Respond to the Complaint. Defendant then filed a Motion for More Definite Statement dated March 29, 2004. On June 16, 2004, while the Motion for More Definite Statement was pending, the parties filed their Rule 26(f) Planning Meeting Report

setting forth a relatively aggressive discovery and trial preparation schedule. The Motion for More Definite State was ultimately denied by the Court on August 6, 2004.

On August 20, 2004, the Defendant once again moved for an extension of time to September 4, 2004 to respond to the complaint, which motion was granted. Rather than file an answer, on September 7, 2004, Defendant filed a Motion to Dismiss Count Two of the Complaint. Plaintiffs filed a Memorandum in Opposition to the Motion to Dismiss dated September 27, 2004. The Motion to Dismiss has not yet been decided by this Court.

Since the Defendant has not yet answered the Complaint during the pendency of the Motion to Dismiss and Plaintiffs are not sure how the Defendant intends to answer the remaining allegations in the Complaint, Plaintiffs have been restricted in their ability to attempt to conduct meaningful discovery of the Defendant. Plaintiffs did serve Requests for Production on the Defendant dated May 31, 2005. On June 30, 2005, Defendant filed its first Motion for Extension of Time to Respond to Plaintiffs' Requests for Production seeking an extension to August 1, 2005, which motion was granted.[1] On or about July 20, 2005, 18 months after the commencement of this action, Defendant filed the pending Motion to Transfer this case to the United States District Court Middle District of Alabama Eastern Division pursuant to 28 U.S.C. § 1404(a). For the reasons set forth below, Kennedy's Motion to Transfer should be denied.

---

[1] On August 1, 2005, Defendant sought another extension of time to respond to Plaintiffs'

7

## II. LAW AND ARGUMENT

### A. Standard Of Review On Motion To Transfer Under 28 U.S.C. §1404(a).

28 U.S.C. §1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Motions to transfer under §1404(a) "lie within the broad discretion of the district court." Bridgeport Machines, Inc. v. Alamo Iron Works, Inc., 76 F.Supp.2d 214, 216 (D.Conn. 1999). The determination of whether a case may be transferred under §1404(a) requires an "individualized, case-by-case consideration of convenience and fairness." Van Dusen v. Barrack, 376 U.S. 612, 622 (1964).

The burden of demonstrating the desirability of transfer lies with the moving party. Filmline (Cross Country) Inc. Productions v. United Artists Corp., 865 F.2d 513, 521 (2d Cir. 1989). The party seeking transfer must demonstrate by clear and convincing evidence that public and private factors favor the transfer to another forum. See Pitney Bowes, Inc. v. National Presort, 33 F.Supp.2d 130, 131 (D.Conn. 1998); Van Ommeren Bulk Shipping, B.V. v. Tagship, 821 F.Supp. 848 (D. Conn. 1993).

The court may consider the following relevant factors when deciding a motion to transfer under 28 U.S.C. §1404(a): (1) the plaintiff's choice of forum; (2) the convenience of the parties;

---

Production Requests until twenty (20) days after this Court rules on the Motion to Transfer.

8

(3) the convenience of material witnesses; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; and (6) trial efficiency and other considerations affecting the interests of justice. Bridgeport Machines, Inc. v. Alamo Iron Works, Inc., 76 F.Supp.2d 214, 216 (D.Conn. 1999); BRM Indus. V. Mazak Corp., 42 F.Supp.2d 176, 180 (D.Conn. 1999). When weighing the relevant factors, "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." Gulf Oil Corp v. Gilbert, 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). A review of the relevant factors, coupled with the Defendant's 18-month delay in seeking a transfer, reveals that the Defendant's Motion to Transfer should be denied.

### B. The Plaintiffs' Choice Of Connecticut As A Forum, Together With The Parties' Mandatory Forum Selection Clause, Weighs Against Transfer.

The forum selection clause in the Settlement Agreement provides that any action for breach of the Settlement Agreement "*shall* be commenced in a court of competent jurisdiction in Fairfield County, Connecticut." [Emphasis Added]. (Affidavit of Michael Mangan, para. 6). Furthermore, the clause mandates that jurisdiction and venue in Connecticut "shall lie unchallenged by either party." Forum-selection clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." Freedman v. America Online, Inc., 294 F.Supp.2d 238, 241-42 (D.Conn. 2003)

9

*Opinion Vacated in Part on Reconsideration by* Freedman v. America Online, Inc., 2004 WL 234661 (D.Conn. Jan 30, 2004), citing M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972). Moreover, "[t]he party resisting a forum selection clause must overcome a substantial presumption in favor of enforcement." Id. citing Indymac Mortgage Holdings Corp. v. Mostafa Reyad, 167 F.Supp.2d 222, 244 (D.Conn. 2001); see also Pitney Bowes, Inc. v. National Presort, 33 F.Supp.2d 130, 131 (D.Conn. 1998).

"The presence of a forum-selection clause such as the parties entered into in this case will be a significant factor that figures centrally in the district court's calculus." Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988). "Unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." Bridgeport Machines, Inc. v. Alamo Iron Works, Inc., 76 F.Supp.2d 214, 216 (D. Conn. 1999). The Court "must give deference to a strong presumption in favor of a plaintiff's choice of forum, which may be overcome only by clear and convincing evidence that private and public interest factors favor trial in the alternative forum." Adams v. Warner, 83 F.Supp.2d 296, 298 (D.Conn. 1999), citing Piper Aircraft Co. v. Reyno, 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). Even if certain improper conduct of the Defendant occurred in Alabama, given that Plaintiffs filed this action in the state where they maintain their management offices and QCC maintains its principal

place of business, their chosen form of Connecticut is "entitled to substantial consideration." Bridgeport Machines, Inc. v. Alamo Iron Works, Inc., 76 F.Supp.2d at 217.

Notwithstanding Defendant's argument to the contrary, the forum selection clause in the Settlement Agreement is mandatory rather than permissive. The Settlement Agreement between the parties that gave rise to this action clearly states that "[a]ny action for breach of the terms of this Agreement *shall* be commenced in a court of competent jurisdiction within Fairfield County Connecticut *where jurisdiction shall be unchallenged by either party*." (Emphasis added). (Affidavit of Michael Mangan, para. 6). The use of the term "shall" in a contract, as in the forum selection clause at issue, is considered mandatory. Black's Law Dictionary (6th Ed. 1990). ("As used in statutes, contracts, or the like, this word is generally imperative or mandatory. In common or ordinary parlance, and in its ordinary signification, the term 'shall' is a word of command, and one which has always or which must be given a compulsory meaning; as denoting obligation."). See also TUC Electronics, Inc. v. Eagle Telephonics, Inc., 698 F.Supp. 35 (D.Conn. 1998).

While Kennedy has admitted that the Middle District of Alabama Eastern Division would have personal jurisdiction over him, and it may have personal jurisdiction over one or more of the Plaintiffs, the forum selection clause mandates any action arising under the Settlement Agreement be brought in Connecticut. In light of the clause, arguably the action would have

11

been subject to dismissal for improper venue had it first been brought in Alabama. Because of the mandatory language of the forum selection clause, this is not an action that "might have been brought" in Alabama and, therefore, a transfer under 28 U.S.C. §1404(a) is not appropriate.

Kennedy raises a final, novel argument that the forum selection clause should not be enforced because he was forced to execute the Settlement Agreement "under duress." (Kennedy's Memorandum of Law, p. 10). Plaintiffs deny that Kennedy executed the Settlement Agreement under duress. (Affidavit of Michael Mangan, para. 7). Indeed, his handwritten changes to same strongly suggest that he was not under duress. Certainly, it would be inappropriate for the Court to analyze Kennedy's "duress" defense, which has not even been made an issue by way of affirmative defense in the pleadings at this point, in the context of a Motion to Transfer.

### C. The Locus of Operative Facts in Alabama Does Not Require the Court to Transfer This Action.

Kennedy argues that the operative facts at issue in the action occurred in Alabama. Certainly, Kennedy's solicitation of Chenoweth and Linn occurred in Alabama. In light of the forum selection clause, however, the occurrence of operative facts in Alabama does not mandate transfer to Alabama under 28 U.S.C. §1404(a).

Kennedy argues that a Plaintiff's choice of forum is given less weight if the operative facts have little connection to the forum. In support of his argument, Kennedy cites Alden v. Eazypower Corp., 294 F.Supp.2d 233, 237 (D. Conn. 2003). Kennedy's reliance on Alden is misplaced. In Alden, there was no forum selection clause at issue. What the Court addressed was that Plaintiff's choice of forum *by commencing the action in Connecticut*, without the presence of a forum selection clause, would not be controlling if the operative facts occurred outside of Connecticut. Alden does not address the situation present in this action, where the forum selection clause in the Settlement Agreement mandates venue in Connecticut.

### D. Defendant Has Waived His Right to Assert His Own Convenience as a Factor Favoring Transfer, and Connecticut is a More Convenient Forum for Plaintiffs.

Defendant argues that the District of Connecticut is an inconvenient forum for him as he resides and works in Alabama. "A party who signs an agreement containing venue and jurisdiction selection clauses may be deemed to have waived his right to assert his own convenience as a factor favoring a transfer to another forum under Section 1404(a)." Leasing Service Corp. v. Graham, 646 F.Supp. 1410 (S.D.N.Y. 1986); see also TUC Electronics, 698 F.Supp. at 39, n.5 (citations omitted); Falconwood Financial Corp. v. Griffin, 838 F.Supp. 836, 840 (S.D.N.Y. 1993). As the Settlement Agreement contained a forum selection clause, Defendant has waived his right to assert his own convenience as a factor favoring transfer under

13

Section 1404(a). Accordingly, this factor also weighs in favor of this Court retaining jurisdiction.

Plaintiff, QCC is the parent of QAC (now merged into Qantum Holdings, LLC), which is the parent of Qantum Auburn. (Affidavit of Michael Mangan, para. 4). As Defendant admits, QCC's principal place of business is located in Stamford, Connecticut. QCC's senior management, and its anticipated witnesses at the trial of this action, reside and work in Connecticut. (Affidavit of Michael Mangan, para. 5, 9). Connecticut is clearly a convenient forum for Plaintiffs, while Alabama would be an inconvenient forum. (Affidavit of Michael Mangan, para. 10). Moreover, given that QCC "is headquartered in [Connecticut] and has a legitimate interest in protecting itself from being sued in all 50 states," Connecticut is a more convenient forum for QCC. Freedman, 294 F.Supp.2d at 245. Since Connecticut is a more convenient forum for Plaintiffs, and the Defendant waived his convenience as a factor by executing the Settlement Agreement with the forum selection clause, the convenience of the parties factor does not support transfer to Alabama.

### E. Convenience Of The Witnesses.

Defendant argues that all material witnesses, including Linn, Chenoweth and Thomas Hayley, Tiger's President, are located in Alabama and process is not available to compel their

14

presence in the District of Connecticut. Defendant suggests that the convenience of the witnesses is the single most important factor governing the decision to transfer a case. (Defendant's Memorandum, p. 13). Plaintiffs respectfully disagree.

Despite Defendant's assertions to the contrary, courts have found that "the existence of a potential third party defendant or witness not subject to this Court's jurisdiction is certainly a factor to consider, but is not necessarily dispositive." Freedman, 294 F.Supp.2d at 244-45 (citation omitted). Moreover, as addressed in Section II(B) above, the presence of a forum selection clause is a "substantial factor" that is "central" to any decision on a motion to transfer under §1404(a). Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988).

Defendant has not made any showing that his non-party witnesses would be unwilling to travel to Connecticut or that travel would cause extreme hardship or inconvenience. See L'Amy, Inc. v. LePage, 2000 WL 565483 (D.Conn. 2000) (attached as Exhibit I to Defendant's Memorandum). While the non-party witnesses identified by Defendant cannot be compelled to attend a trial in Connecticut, any non-cooperative witnesses may be compelled to give deposition testimony through the use of Fed. R. Civ. P. 45. Thus, any testimony secured via depositions would be available at trial. Any documents relevant to this action that Tiger possesses could also be obtained via the use of Fed. R. Civ. P. 45. Consequently, this factor does not require transfer to the Middle District of Alabama Eastern Division.

15

F. **Transfer of this Action Will Not Promote the Interests of Justice and Judicial Economy.**

Citing L'Amy, Inc. v. LePage, 2000 WL 565483 (D.Conn. 2000), Defendant argues that there is a strong policy favoring litigation of related claims in the same tribunal so that discovery may be streamlined and inconsistent results can be avoided. (Defendant's Memorandum, p. 15). Defendant then leaps to the unsubstantiated conclusion that transfer of this action to the Middle District of Alabama Eastern Division will promote these policy interests. Plaintiffs respectfully disagree.

What Defendant fails to acknowledge is that only the Tiger Action is pending in the Middle District of Alabama Eastern Division. The Alabama State Court Action, in which Linn, Chenoweth and Turner are defendants, is pending in state court in Alabama. Discovery and trial of that action will be separate and distinct from this action regardless of whether this action is transferred. Furthermore, the only claim in the Tiger Action is a claim for tortious interference with contractual and business relations. This action, and only this action, involves the Settlement Agreement and Kennedy's Employment Agreement. While there may be some common witnesses, the legal issues and causes of action are distinct. Moreover, transfer does not necessarily mean that the actions will be consolidated, particularly in light of a pending September 8, 2005 discovery deadline in the Tiger Action that will likely pass before a ruling on

16

this Motion to Transfer. In light of the foregoing, Defendant has failed to demonstrate that the interest of justice and judicial economy weigh in favor of transfer.

### G.  The Defendant's Delay in Filing this Motion Should Constitute a Waiver of Any Right To Move To Transfer This Action.

Since the initiation of this action, Defendant has engaged in a practice of filing pleadings and motions which have delayed the prosecution of this action of the conducting of discovery. The action was pending for 18 months before Defendant filed his motion, during which time he removed the case from State Superior Court, filed multiple motions for extensions of time to file pleadings, filed a Rule 12(e) Motion for More Definite Statement, and filed a Motion to Dismiss. Defendant expressly submitted to the jurisdiction of this Court by removing the case. Moreover, he has actively litigated this action in Connecticut by the filing of multiple substantive pleadings. He did not raise venue in its initial motion, and, as a result, waived its right to do so. See Berol Corp. v. Bic Corp., 2002 WL 1466829 (N.D.Ill. 2002) (copy attached hereto as Exhibit B) ("A motion to transfer pursuant to Section 1404(a) is analogous to a Rule 12(b)(3) motion to change venue, and for this reason the § 1404(a) motion has been viewed as a Rule 12 motion for purposes of waiver under Rule 12(g). Under Rule 12(g) all Rule 12 defenses must be consolidated in one motion, and the failure to raise a defense available at the time the initial

motion is raises acts as a waiver of the defenses under Rule 12(h)(1)."). In light of Defendant's delay in filing this motion, the Motion to Transfer should be denied.

## III. CONCLUSION

In light of the significant weight afforded to a forum selection clause, and the balancing of the other factors considered pursuant to §1404(a) in favor of the Plaintiffs, the forum selection clause should be upheld and Defendant's Motion to Transfer should be denied.

PLAINTIFFS,

BY: /s/ [signature]
Scott M. Harrington/ct02482
DISERIO MARTIN O'CONNOR &
  CASTIGLIONI LLP
One Atlantic Street
Stamford, CT 06901
(203)358-0800

18

## CERTIFICATION

This is to certify that a true copy of the foregoing was mailed, postage prepaid, to the following counsel and parties of record:

Claire E. Ryan, Esq.
Scott R. Lucas, Esq.
Michael Bayonne
Martin, Lucas & Chioffi, LLP
177 Broad Street
Stamford, CT 06901

Dated: August 17, 2005
   Stamford, CT

           /s/ _____
           Scott M. Harrington/ct02482

Case 3:04-cv-00362-SRU Document 44 Filed 08/18/2005 Page 1 of 19