# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

RECEIVED
2004 MAR -3  A 10: 22
DEBRA P. HACKETT
U.S. DISTRICT COURT
MIDDLE DIST. OF ALA.

FILED
MAR - 3 2004
CLERK
U. S. DISTRICT COURT
MIDDLE DIST. OF ALA.

| | |
|---|---|
| Qantum Communications Corporation, a corporation; Qantum of Auburn, LLC, a limited liability company; Qantum Acquisition Company, LLC, a limited liability company; Qantum Holding, LLC, a limited liability company; Qantum of Auburn License Company, LLC, a limited liability company<br><br>Plaintiffs,<br><br>v.<br><br>Tiger Communications, Inc., a corporation<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>CIVIL ACTION NO. 04-W-190-E<br>)<br>)  JURY TRIAL REQUESTED<br>)<br>)<br>) |

## COMPLAINT

Plaintiffs Qantum Communications Corporation; Qantum of Auburn, LLC; Qantum Acquisition Company, LLC; Qantum Holding, LLC and Qantum of Auburn License Company, LLC ("Qantum"), by and through their attorneys, allege the following:

### I. PARTIES AND NON-PARTIES

1.      Plaintiff Qantum Communications Corporation is a Delaware corporation having its principal place of business in Stamford, Connecticut. Plaintiff Qantum of Auburn, LLC is a limited liability company organized under the laws of the State of Delaware and having no members who are citizens of the State of Alabama. Plaintiff Qantum Acquisition

B0370222                                                              1

Company, LLC is a limited liability company organized under the laws of the State of Delaware and having no members who are citizens of the State of Alabama. Plaintiff Qantum Holding, LLC is a limited liability company organized under the laws of the State of Delaware and having no members who are citizens of the State of Alabama. Plaintiff Qantum of Auburn License Company, LLC is a limited liability company organized under the laws of the State of Delaware and having no members who are citizens of the State of Alabama.

2. Upon information and belief, Defendant Tiger Communications, Inc. (Tiger Communications") is an Alabama corporation with it principal place of business in Tallassee, Alabama.

3. Upon information and belief, non-party John F. Kennedy ("Kennedy") is an Alabama resident.

4. Upon information and belief, non-parties Meghan Chenoweth ("Chenoweth"), Stacey Linn ("Linn"), and Amelia Tuck Turner ("Turner") are Alabama residents.

## II. JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1332 as there is complete diversity of citizenship between the parties and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

## III. FACTUAL ALLEGATIONS

6. Through this action, Qantum seeks to redress a wrong of a most fundamental nature: Tiger Communications unlawfully, unjustifiably and intentionally interfered with Qantum's business and contractual relationships with Chenoweth, Linn and Turner. Tiger Communications' actions caused damage to Qantum and continue to cause damage to Qantum to the extent the actions have ongoing effects on the business and business relationships of Qantum.

7. On or about September 1, 1999, in consideration of continued employment, Chenoweth entered into a Non-Compete Agreement with Root Communications Group, L.P. ("Root"), the owner of various radio stations in and around the Auburn/Opelika, Alabama area.

8. In consideration of the benefits of employment, Linn entered into a Non-Compete Agreement with Qantum of Auburn, LLC, the owner of various radio stations in and around the Auburn/Opelika, Alabama area.

9. On or about June 14, 2002, in consideration of continued employment, Turner entered into a Non-Compete Agreement with Root, the owner of various radio stations in and around the Auburn/Opelika, Alabama area.

10. At all materials times, Chenoweth and Turner were employed as salespersons for Root, and later, Qantum.

11. At all material times, Linn was employed as a salesperson for Qantum.

B0370222                                                3

12. The Non-Compete Agreement between Root and Chenoweth placed certain reasonable restrictions on Chenoweth's ability to compete with Root within a defined Market Area. The Non-Compete Agreement defined Root's Market Area as "the territory within a 75 mile radius of the city(ies) of license and/or the transmitter facility(ies) of the radio station(s) in which [Chenoweth] has worked for [Root]."

13. The Non-Compete Agreement between Qantum and Linn placed certain reasonable restrictions on Linn's ability to compete with Qantum within a defined Market Area. The Non-Compete Agreement defined Qantum's Market Area as "the territory within a 75 mile radius of the city(ies) of license and/or the transmitter facility(ies) of the radio station(s) in which [Linn] has worked for Qantum."

14. The Non-Compete Agreement between Root and Turner placed certain reasonable restrictions on Turner's ability to compete with Root within a defined Market Area. The Non-Compete Agreement defined Root's Market Area as "the territory within a 75 mile radius of the city(ies) of license and/or the transmitter facility(ies) of the radio station(s) in which [Turner] has worked for Root."

15. As part of their Non-Compete Agreements, Chenoweth, Linn and Turner acknowledged that Root had legitimate business interests to protect, including, among other things, valuable business information, substantial relationships with specific prospective and existing sales accounts, sales account good will associated with extraordinary or specialized

training of its employees, and promotion of Root's business practice through its established name in the radio industry.

16. The Non-Compete Agreement between Root, as employer, and Chenoweth, as employee, provided as follows:

> "Unless Employee receives Root's advance written waiver as described in paragraph 8 below, during his employment with Root and for a period of six (6) months thereafter, whatever the reason for Employee's termination, Employee shall not, either directly or indirectly, either on his/her own behalf or on behalf of another business, engage in the following activities, or assist other in such activities, anywhere in Root's Market Area:
>
> a) hire, recruit, or attempt to recruit, for any radio station, any person employed by Root at any time during the previous twelve (12) months;
>
> b) solicit or accept any radio advertising business from any of Root's current, former or prospective accounts (a prospective account is defined as any entity Root has actively solicited, planned to solicit or sold advertising time to during the twelve (12) months before Employee's termination of employment with Root); or
>
> c) enter into, engage in, be employed by, be connected to or consult for any radio station within Root's Market Area.

17. The Non-Compete Agreement between Qantum, as employer, and Linn, as employee, provided as follows:

> "Unless Employee receives Qantum's advance written waiver as described in paragraph 8 below, during his employment with

Qantum and for a period of six (6) months thereafter, whatever the reason for Employee's termination, Employee shall not, either directly or indirectly, either on his/her own behalf or on behalf of another business, engage in the following activities, or assist other in such activities, anywhere in Qantum's Market Area:

    a)    hire, recruit, or attempt to recruit, for any radio station, any person employed by Qantum at any time during the previous twelve (12) months;

    b)    solicit or accept any radio advertising business from any of Qantum's current, former or prospective accounts (a prospective account is defined as any entity Qantum has actively solicited, planned to solicit or sold advertising time to during the twelve (12) months before Employee's termination of employment with Qantum); or

    c)    enter into, engage in, be employed by, be connected to or consult for any radio station business within Qantum's Market Area in a <u>Sales</u>, or managerial position.

18.    The Non-Compete Agreement between Root, as employer, and Turner, as employee, provided as follows:

"Unless Employee receives Root's advance written waiver as described in paragraph 8 below, during his employment with Root and for a period of six (6) months thereafter, whatever the reason for Employee's termination, Employee shall not, either directly or indirectly, either on his/her own behalf or on behalf of another business, engage in the following activities, or assist other in such activities, anywhere in Root's Market Area:

B0370222

6

  a)   hire, recruit, or attempt to recruit, for any radio station, any person employed by Root at any time during the previous twelve (12) months;

  b)   solicit or accept any radio advertising business from any of Root's current, former or prospective accounts (a prospective account is defined as any entity Root has actively solicited, planned to solicit or sold advertising time to during the twelve (12) months before Employee's termination of employment with Root); or

  c)   enter into, engage in, be employed by, be connected to or consult for any radio station within Root's Market Area in a <u>Sales</u>, or managerial position.

19.  Chenoweth's and Turner's Non-Compete Agreements provided that any successor or assignee of Root was authorized to enforce the Non-Compete Agreement as if the name of such successor or assignee replaced Root throughout the Non-Compete Agreement.

20.  Effective July 2, 2003, Qantum purchased 100% of the limited partnership interests of Root. As part of the sale, Root assigned its rights and liabilities to Qantum, including the rights established by the Non-Compete Agreements with Chenoweth, Linn and Turner.

21.  Chenoweth, Linn and Turner recently resigned their employment with Qantum and accepted positions with Qantum's competitor, Tiger Communications.

22. Tiger Communications operates certain radio stations in the Auburn/Opelika, Alabama area, which are located within Root's Market Area defined by the Non-Compete Agreement.

23. Tiger Communications knew of Qantum's contractual relationships with Chenoweth, Linn and Turner before the above described resignations and actively interfered with the contractual relationships, thereby injuring and damaging Qantum.

24. Despite knowledge of Qantum's contractual relationships with Chenoweth, Linn and Turner, Tiger Communications, by an through its agents and employees, including Kennedy, actively solicited Chenoweth, Linn and Turner to resign their positions with Qantum and accept employment with Tiger Communications.

25. Qantum advised Chenoweth, Linn and Turner by letters of December 23, 2003, January 16, 2004 and March 1, 2004, respectively, that it considered their employment with Tiger Communications as a breach of the Non-Compete Agreements.

26. Tiger Communications' actions caused damage to Qantum and continue to cause damage to Qantum to the extent Tiger Communications' actions are ongoing and to the extent Chenoweth, Linn and Turner remain employed with Tiger Communications.

## IV. CAUSES OF ACTION

### COUNT ONE
### (INTERFERENCE WITH BUSINESS AND CONTRACTUAL RELATIONSHIPS)

27. Qantum re-alleges all prior paragraphs of the Complaint as if set out herein.

28. Qantum is in contractual privity with Chenoweth, Linn and Turner.

B0370222                                8

29. At all material times, Tiger Communications knew of the contractual privity that existed between Qantum, on the one hand, and Chenoweth, Linn and Turner, on the other.

30. Tiger Communications actively solicited, encouraged and promoted Chenoweth, Linn and Turner to ignore and breach their contractual obligations to Qantum and accept employment with Tiger Communications in violation of the terms of the above-described Non-Compete Agreements.

31. Tiger Communications engaged in the above-described actions with the knowledge and/or belief that it would cause and/or was substantially certain to cause Chenoweth, Linn and Turner to resign their positions with Qantum in violation of the terms of the above-described Non-Compete Agreements.

32. By its actions, Tiger Communications intentionally and unjustifiably interfered with Qantum's contractual and business relationships with Chenoweth, Linn and Turner.

33.. Tiger Communications' actions proximately caused damage and injury to Qantum, including substantial economic harm to Qantum and injury to Qantum's business and business relationships.

WHEREFORE, Qantum respectfully demands compensatory, punitive, incidental and consequential damages, including reasonable attorneys' fees, against Tiger Communications in an amount to exceed $75,000, exclusive of interest and costs.

## COUNT TWO
## (PRELIMINARY INJUNCTION)

34. Qantum re-alleges all prior paragraphs of the Complaint as if set out herein.

35. Qantum requests the Court to impose immediate equitable relief in the nature of a preliminary injunction to provide the following relief:

   (a) Enjoining and restraining Tiger Communications, and all the persons in active concert and participation with Tiger Communications, pending a final hearing and determination of this cause, from continuing to employ Chenoweth, Linn and Turner.

   (b) Enjoining and restraining Tiger Communications, and all the persons in active concert and participation with Tiger Communications, pending a final hearing and determination of this cause, from contacting or soliciting Qantum's current, former or prospective accounts as defined by the Non-Compete Agreement;

   (c) Requiring Tiger Communications to make an accounting to this Court in the form of a sworn affidavit as to the nature and extent of any contact or solicitation made by Chenoweth, Linn and Turner since accepting employment with Tiger Communications of Qantum's current, former or prospective accounts as defined by the Non-Compete Agreement; and

   (d) Such other relief as may be equitable under the premises.

36. Qantum seeks injunctive relief on the grounds that:

   (a) Unless restrained by this Court, Qantum justifiably fears that Tiger Communications will continue to perform such acts sought by Qantum to be prohibited;

   (b) Such action by Tiger Communications has and will result in irreparable harm, injury and loss to Qantum in that

Tiger Communications' actions have and will result in substantial damage to its business and business relationships;

(c) The issuance of the said preliminary injunction will not cause undue inconvenience or hardship to Tiger Communications, but will prevent irreparable injury to Qantum;

(d) The issuance of a preliminary injunction Order will preserve the status quo and is consistent with the remedies and relief available to Qantum under the above-described Non-Compete Agreements.

## V. PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Qantum demands an award of compensatory and punitive damages against Tiger Communications in an amount to exceed $75,000, exclusive of interest and costs, plus all other relief permitted by law, all costs of this action and all attorney's fees incurred by Qantum, together with such further and different relief to which Qantum is entitled.

**QANTUM DEMANDS TRIAL BY STRUCK JURY**

/s/ Bentley Owens
J. Bentley Owens, III
Bryan O. Balogh
Attorneys for Plaintiffs

OF COUNSEL:
STARNES & ATCHISON LLP
Seventh Floor, 100 Brookwood Place
Post Office Box 598512
Birmingham, Alabama, 35259-8512
(205) 868-6000

B0370222                           11

DEFENDANT'S ADDRESS:
Tiger Communications, Inc.
2514 South College Street
Suite 104
Auburn, Alabama 36832