UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| QANTUM COMMUNICATIONS CORPORATION, et al., | : : | |
| Plaintiffs, | : : | |
| v. | : : | Civil Action No. 3:04cv315 (CFD) |
| JOHN F. KENNEDY | : : | |
| Defendant. | : | |

**RULING ON MOTION TO TRANSFER VENUE**

Plaintiffs Qantum Communications Corporation, Qantum of Auburn, LLC, and Qantum Acquisition Company, LLC. ("Qantum Plaintiffs") initially brought this suit against its former employee, John F. Kennedy, in the Connecticut Superior Court on January 21, 2004. The case was removed by the defendant to this Court on February 24, 2004 on the basis of diversity of citizenship, 28 U.S.C. § 1332. Defendant Kennedy has moved pursuant to 28 U.S.C. § 1404(a) for a change of venue to the District Court for the Middle District of Alabama, Eastern Division. The Qantum Plaintiffs object to Kennedy's motion primarily on the ground that his employment contract contained a forum selection clause providing that litigation occur in the District of Connecticut. For the following reasons, Kennedy's motion is granted.

**I.   Background**

John F. Kennedy was formerly employed by Root Communication Group, L.P. ("Root") as a Station Manager and Director of Sales for several radio stations owned by Root in the Auburn, Alabama and West Point, Georgia areas. Kennedy had an Employment Agreement with

-1-

Root that contained non-solicitation and non-compete provisions. The Employment Agreement also provided that the laws of the State of Pennsylvania applied to it, and that any action for breach of the agreement is to be commenced in Montgomery County, Pennsylvania. On July 2, 2003, Qantum Auburn purchased all of the limited partnership interests of Root, including the ownership of the radio stations. As part of the transaction, Root assigned its rights and liabilities to Qantum Auburn, including the Employment Contract. In August 2003, Kennedy resigned from his position and entered a Settlement Agreement with Qantum Auburn. The Settlement Agreement is governed by the substantive law of the state of Alabama. It also contains a forum selection clause, stating that actions for breach of its terms shall be commenced in Fairfield County, Connecticut.

Kennedy accepted a position as the Director of Sales with Tiger Communications ("Tiger"), a competitor of Qantum Auburn that also operates radio stations in the Auburn, Alabama area. After Kennedy was working for Tiger, two other former Qantum Auburn employees, Meghan Chenoweth and Stacey Linn, resigned from Qantum Auburn and accepted jobs with Tiger.

Qantum then brought this action against Kennedy for breach of agreements surrounding the termination of his employment. The complaint alleges six counts for breach of the Employment Agreement, breach of the Settlement Agreement, Intentional Interference with Business and Contractual Relations, Fraud in the Inducement, Injunctive Relief, and Declaratory Judgment.

Qantum also filed law suits against a number of former employees, including Chenoweth and Linn, in the Middle District of Alabama Eastern Division. Those actions were consolidated

and then dismissed for lack of subject matter jurisdiction. Similar actions against those plaintiffs are now pending in Alabama state court. Qantum also maintains an action against Tiger in the Middle District of Alabama.

Kennedy is a resident of Georgia, and all of the work that he did for Root, Qantum Auburn, and Tiger has occurred in Georgia and Alabama. Qantum Acquisition and Qantum Auburn are registered to do business in the State of Alabama. All of the Qantum Plaintiffs are Delaware corporations that maintain principal places of business in Stamford, Connecticut.

**II.  Discussion**

Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The undisputed goal of Section 1404(a) "is to prevent waste 'of time, energy and money' " and "to protect litigants, witnesses and the public against unnecessary inconvenience and expense." Van Dusen v. Barrack, 376 U.S. 612, 616 (1964) (quoting Continental Grain Co. v. Barge FBL-585, 364 U.S. 19, 26-27 (1960)).

In Stewart Organization, Inc. v. Ricoh Corporation, 487 U.S. 22 (1988), the United States Supreme Court held that, although a forum selection clause should be "a significant factor" in the district court's decision on whether to transfer venue in a diversity action, it alone is not dispositive, and Section 1404(a) required courts to take into account other important considerations. Id. at 29. "Section 1404(a) directs a district court to take account of factors other than those that bear solely on the parties' private ordering of their affairs. The district court must also weigh in the balance the convenience of the witnesses and those public-interest factors of

-3-

systemic integrity and fairness that, in addition to private concerns, come under the heading of 'the interest of justice.' " Id. at 30; see also Red Bull Associates v. Best Western International, Inc., 862 F.2d 963, 967 (2d Cir. 1988) ( "Section 1404(a) reposes considerable discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'")(quoting Stewart, 487 U.S. at 29).  Therefore, under the discretion afforded by § 1404(a), a district court may transfer an action based on the presence of a forum-selection clause, or despite the presence of a forum-selection clause. See Heller Financial, Inc. v. Midwhey Powder Co., 883 F.2d 1286, 1293 (7th cir. 1989) ("Despite the existence of a valid forum-selection clause, courts may still transfer a case under § 1404(a). . . . This is because only one of § 1404(a)'s factors--convenience of the parties--is within the parties' power to waive.").

Section 1404(a) provides that a district court may transfer an action to a district in which the action originally "might have been brought."  Neither party claims that the present action could not have been brought originally in the Middle District of Alabama under 28 U.S.C. § 1391(a) (setting forth the proper forum for a diversity action). Therefore, in order to determine whether transfer to that district is appropriate, the Court should engage in the "individualized, case-by-case consideration of convenience and fairness" required by the Supreme Court's interpretation of § 1404(a). Stewart, 487 U.S. at 29.[1]  When conducting such a individualized

---

[1] In Stewart, the Supreme Court declined to issue an authoritative list of the factors a district court should consider under § 1404(a), choosing instead to leave that to each court's discretion. The Supreme Court did note, however, the district court in Stewart would be called upon "to address such issues as the convenience of a Manhattan forum given the parties' expressed preference for that venue, and the fairness of transfer in light of the forum-selection clause and the parties's relative bargaining power." Stewart, 487 U.S. at 29.

analysis, the district courts generally have looked at the following factors: (1) the convenience of witnesses; (2) the availability of process to compel attendance of unwilling witnesses; (3) the location of relevant documents and the relative ease of access to sources of proof; (4) the convenience of the parties; (5) the locus of operative facts; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded to plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances. Alden Corp. v. Eazypower Corp., 294 F. Supp.2d 233, 237 (D.Conn. 2003); Charter Oak Fire Ins. Co. v. Broan-Nutone, L.L.C., 294 F. Supp.2d 218, 220 (D.Conn. 2003); U.S. Surgical Corp. v. Imagyn Medical Technologies, Inc., 25 F. Supp.2d 40, 46 (D.Conn. 1998); see also Eskofot A/S v. E.I. Du Pont De Nemours & Co., 872 F. Supp. 81, 95 (S.D.N.Y. 1995) (citing same factors). "There can be no doubt that the burden is on the defendant, when it is the moving party, to establish that there should be a change of forum." Factors Etc., Inc. v. Pro Arts, Inc., 579 F.2d 215, 218 (2d Cir.1978) rev'd on other grounds, Factors Etc., Inc. v. Pro Arts, Inc., 652 F.2d 278 (2d Cir. 1981); see also Red Bull Assoc. v. Best Western Int'l., Inc., 862 F.2d 963, 966-67 (1988) (affirming district court's discretion not to transfer despite presence of forum selection clause); United Rentals, Inc. v. Pruett, 296 F. Supp.2d 220, 228 (D.Conn. 2003) (placing burden on movant despite presence of forum-selection clause); O'Brien v. Okemo Mountain, Inc., 17 F. Supp.2d 98, 102 (D.Conn. 1998) (same). Each of these factors will be considered below.

**(1) The Convenience of Witnesses**

Convenience of the witnesses is probably the single-most important factor used to

determine whether to transfer a case. See Hernandez v. Graebel Van Lines, 761 F. Supp. 983, 990 (E.D.N.Y. 1991); Arrow Elecs., Inc. v. Ducommum, Inc., 724 F. Supp. 264, 265 (S.D.N.Y. 1989); Dateline Corp. v. Unirock Management Corp., 1997 WL 205794, at *4 (D.Conn., April 11, 1997). "While the convenience of party witnesses is a factor to be considered, the convenience of non-party witnesses is a more important factor." Aquatic Amusement Assoc. v. Walt Disney World Co., 734 F. Supp 54, 57 (N.D.N.Y. 1990); see South Street Capital Corp. v. Dente, 734 F. Supp. 54, 57 (S.D. Tex. 1994) (convenience of non-party witnesses is accorded greater weight in a transfer of venue analysis). A party moving under Section 1404(a) must specify the key witnesses to be called and make a general statement of what their testimony will cover. Factors Etc., Inc. v. Pro Arts, Inc., 579 F.2d 215, 218 (2d Cir. 1978), rev'd on other grounds, Factors Etc., Inc. v. Pro Arts, Inc., 652 F.2d 278 (2d Cir. 1981). "[I]t is not the prospective number of witnesses in each district that determines the appropriateness of a transfer, but, rather, the materiality of their anticipated testimony." Charter Oak Fire Ins. Co. v. Broan-Nutone, L.L.C., 294 F. Supp.2d 218, 220 (D.Conn. 2003) (quoting Schwartz v. Marriott Hotel Services, Inc., 186 F. Supp.2d 245, 249 (E.D.N.Y. 2002).

In support of his motion, Kennedy has identified three people who expects to call as witnesses. He anticipates calling Chenoweth, Linn, and Thomas Hayley, who is the president of Tiger. All of these purported non-party witnesses reside and work in Alabama. Kennedy states that he will seek their testimony regarding the allegations that Qantum has made that Kennedy solicited Chenoweth and Linn to leave Qantum and join Tiger. Qantum argues in response that Kennedy has not adequately asserted that it would be inconvenient for Chenoweth, Linn, and Hayley to travel to Connecticut to serve as witnesses in this case. Instead, Qantum argues that it

would be inconvenient for its senior management, many of whom would be called as plaintiffs' witnesses, to travel to Alabama. Given that one of the party's witnesses will be required to travel to and from Connecticut to Alabama, the inconvenience of Kennedy's witnesses, who are not parties in this case, should be given great weight. This factor, therefore, weighs in favor of transferring the case to Alabama.

### (2) The Availability of Process to Compel Attendance of Unwilling Witnesses

As indicated previously, the convenience of non-party witnesses is a more important factor than the convenience of party witnesses. See Aquatic Amusement Assoc., 734 F. Supp at 57. A district court cannot require "a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business" to appear before it. Fed.R.Civ.P. 45(c)(3)(A)(ii). Therefore, another significant factor for the court to consider is the ability of each venue to compel the attendance of witnesses. Charter Oak, 294 F. Supp.2d at 222 (citing Merkur v. Wyndham Int'l, Inc., 2001 WL 477268, at *4 (E.D.N.Y. Mar.30, 2001)); see also 17 Moore's Federal Practice § 111.13[1][f][iii] ("the location of the majority of non-party witnesses in one of the two districts generally will tip the balance in favor of that district, regardless of where the party witnesses and their employees reside.").

The witnesses that Kennedy has identified are the only non-party witnesses that have been identified in this case. Given that they each reside and work in Alabama, more than 100 miles from Connecticut, the Court finds that this factor counsels heavily in favor of transferring the case. See Hernandez, 761 F. Supp. at 990 (when the majority of non-party witnesses were

beyond the subpoena power of the transferor court, transfer was favored to a district where the witnesses resided).

### (3) The Locus of the Relevant Evidence

"Although the location of relevant documents is entitled to some weight, modern photocopying technology and electronic storage deprive this issue of practical or legal weight." Charter Oak, 294 F. Supp.2d at 221. Given the nature of this action, it is unlikely that there will be any evidence that would be problematic or prohibitively expensive for either party to transport. Nevertheless, the Court notes that it is undisputed that the conduct that will be the focus of a trial occurred in Alabama and Georgia, and most of the evidence relating to such conduct is located there. This factor, therefore, also counsels in favor of transferring the case.

### (4) The Convenience of the Parties

Kennedy is a resident of Georgia. The Qantum Plaintiffs are all Connecticut companies, and Qantum Acquisition and Qantum Auburn are authorized to do business in Alabama. . As with most cases involving motions to transfer, it "appears to the Court that no matter where the case were to be sited, inconvenience is unavoidable to one party or the other, given . . . the logistical problems involved, as they often are, in diversity jurisdiction . . . ." Pitney Bowes, Inc. v. National Presort, Inc., 33 F. Supp.2d 130, 132 (D.Conn. 1998). Nevertheless, the Settlement Agreement that Kennedy signed stated that, "any action for breach of the terms of this Agreement shall be commenced in a court of competent jurisdiction within Fairfield County, Connecticut where jurisdiction and venue shall lie unchallenged by either party." (Complaint, ¶ 44, Settlement

Agreement ¶ 12). The weight given to that clause under the § 1404(a) analysis is increased due to the fact that the parties phrased it as a mandatory clause, and not a permissive or limited clause. See Orix Credit Alliance, Inc. v. Mid-South Materials Corp., 816 F. Supp. 230 (S.D.N.Y.1993) (mandatory clause entitled to great weight); Micro-Assist, 961 F. Supp. at 466 ("permissive forum selection clauses are entitled to somewhat less weight in a § 1404(a) analysis."); 17 Moore's Federal Practice § 111.13[1][p][i][C] (explaining the difference between a mandatory, permissive and limited forum-selection clause). This factor does not weigh in favor of transferring the case to Alabama.

**(5) The Locus of Operative Facts**

The location of operative facts underlying a claim is another key factor in determining a motion to transfer venue. Charter Oak, 294 F. Supp.2d at 220; TM Claims Service v. KLM Royal Dutch Airlines, 143 F. Supp.2d 402, 404 (S.D.N.Y. 2001); Bionx Implants, Inc. v. Biomet, Inc., 1999 WL 342306, at *3 (S.D.N.Y. May 27, 1999). To determine the locus of operative facts, a court must look to the "site of the events from which the claim arises."Alden Corp., 294 F. Supp.2d at 237; 800-Flowers, Inc. v. Intercontinental Florist, Inc., 860 F. Supp. 128, 134 (S.D.N.Y.1994); Distefano v. Carozzi North America, 2002 WL 31640476, at *3 (E.D.N.Y. Nov.16, 2002).

It is undisputed that all of the operative facts in this case occurred in Alabama and Georgia. Kennedy was employed by radio stations in Alabama and Georgia, and also he negotiated and entered the Employment and Settlement Agreements in Alabama. Likewise, Kennedy's alleged solicitation of Chenoweth and Linn occurred in Alabama. The Court finds,

therefore, that the "site of the events from which the claim arises" is not Connecticut. Alden Corp., 294 F. Supp.2d at 237. Consequently, this factor weighs strongly in favor of transferring the case.

**(6) The Relative Means of the Parties**

The "relative financial hardship on the litigants and their respective abilities to prosecute or defend an action in a particular forum are legitimate factors to consider." Charter Oak, 294 F. Supp. at 222 (quoting Michelli v. City of Hope, 1994 WL 410964, at *3 (S.D.N.Y. Aug. 4, 1994)). The Qantum Plaintiffs are large corporate entities, and Kennedy stated in his affidavit that he would "likely suffer financial hardship if required to defend this action in Connecticut, as I would be forced to incur expenses associated with travel for depositions, consultations with counsel and trial." (Kennedy Affidavit, ¶ 20). This factor, therefore, also counsels in favor of transferring the case to Alabama.

**(7) A Forum's Familiarity with the Governing Law**

A federal court sitting in diversity applies the choice of law rules of the forum state. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941). Qantum originally brought this action in the Superior Court of Connecticut, and it was removed to this court on the basis of diversity of citizenship. If this action is transferred to the Eastern District pursuant to § 1404(a), then that district would follow Connecticut's choice of law rules. See Ferens v. John Deere Co., 494 U.S. 516, 519 (1990) ("following a transfer under § 1404(a) initiated by a defendant, the transferee court must follow the choice-of-law rules that prevailed in the transferor court");

Sheldon v. PHH Corp, 135 F.3d 848, 852 (2d Cir. 1998) (noting that choice of law rules from transferor forum apply in transferee forum even if § 1404(a) transfer initiated by the plaintiff); Computer Assoc. Int'l, Inc. v. Altai, Inc., 22 F.3d 32, 35 n.3 (2d Cir. 1994) (choice of law rule from transferor court applied); see also 17 Moore's Federal Practice § 111.20[1][a] (Matthew Bender 3d ed) ("The [Supreme] Court views Section 1404(a) as merely a 'housekeeping measure' that does not carry with it a change in the applicable law."). Whether Connecticut's choice of law rule would counsel in favor of the application of Connecticut law or Alabama law is immaterial for purposes of this motion. More specifically, the Court does not view this case as involving a highly specialized or unique aspect of state law, and concludes that neither this Court or a court in the Middle District of Alabama would have difficulty applying the laws from the other's forum, as " federal courts are accustomed in diversity actions to applying laws foreign to the law of their particular State." Pitney Bowes, 33 F. Supp.2d at 132. Additionally, the parties in this case have agreed that the Settlement Agreement is governed by the laws of Alabama. Thus, this factor favors neither party.

**(8) The Weight Accorded to Plaintiff's Choice of Forum**

"In considering a motion to transfer, a district court ordinarily affords plaintiff's choice of forum substantial weight." Charter Oak Fire, 294 F. Supp.2d at 237; TM Claims Service, 143 F. Supp.2d at 404. "[T]his deference is inappropriate [however] when the parties have entered into a contract providing for a different forum." Outek Caribbean Distr. v. Echo, Inc., 206 F. Supp.2d 263, 266 (D.P.R. 2002); accord Strategic Marketing & Communications v. Kmart, 41 F. Supp.2d 268, 273 (S.D.N.Y. 1998); but see Micro-Assist v. Cherry Communications, 961 F. Supp. 462,

465 (E.D.N.Y. 1997) (despite the presence of a forum-selection, the court found that this factor "weighs against transfer, in that a plaintiff's chosen forum should, where possible, be respected."). This factor therefore, weighs in favor of Qantum.

**(9) Trial Efficiency and the Interests of Justice**

This factor is "broad enough to cover the particular circumstances of each case, which in sum indicate that the administration of justice will be advanced by a transfer." Schneider v. Sears, 265 F. Supp. 257, 263 (S.D.N.Y.1967). Moreover, the Supreme Court has indicated that the interests of justice generally encompasses "public interest factors of systemic integrity and fairness." Stewart, 487 U.S. at 30; see also 17 Moore's Federal Practice § 111.13[1][n] (Matthew Bender 3d ed.) (noting the variety of ways in which courts treat the "interests of justice" factor). In consideration of this factor, the other law suits pending in Alabama — against Tiger in the Middle District, and against Chenoweth and Linn in state court — weigh in favor of transferring the case to Alabama.

Weighing all these factors, the Court concludes that transfer is appropriate. Therefore, the defendant's motion to transfer venue **[Doc. # 38 ] is GRANTED**. The clerk is ordered to transfer this case to the Middle District of Alabama, Eastern Division.

SO ORDERED this __30th__ day of March, 2006, at Hartford, Connecticut.

    /s/ CFD
    **CHRISTOPHER F. DRONEY**
    **UNITED STATES DISTRICT JUDGE**